The Pennsylvania Company *v.* Davis, Executor.

No. 77.

## THE PENNSYLVANIA COMPANY *v.* DAVIS, EXECUTOR.

ACTION.—*By Father for Death of Child.—Survival of.*—An action by a father charging that the death of his infant child was caused by the negligence of the defendant does not abate with the death of the father, and may be continued in the name of the executor. Section 282, R. S. 1881, provides against abatement by death in cases like the one at bar, in which action is given for causing the death of any person.

SAME.—*Complaint.—Freedom from Contributory Negligence. — Special Averments.*—Where the complaint in such action did not aver in general terms that the parents were free from contributory negligence, but the special facts averred showed that there was no negligence on their part contributing to the injury, it is sufficient on that point.

SAME.—*Complaint.—Negligence of Defendant.—Evidence.*—For the sufficiency of the allegation in the complaint charging negligence on the part of the defendant railroad company, and for a discussion of the evidence showing that it does not tend to prove negligence on the part of the company, see opinion.

From the Bartholomew Circuit Court.

*S. Stansifer,* for appellant.

*M. Hacker* and *C. F. Remy,* for appellee.

ROBINSON, C. J.—This action was commenced by William Hunter on a complaint charging that the death of his infant daughter, aged twenty months, was caused by the negligence of the appellant. While the action was pending, and before the issues were formed, William Hunter died, and on the suggestion of his death and motion to continue the action in the name of Joel S. Davis, executor of Hunter's will, appellant objected, and moved that the action be dismissed, because by Hunter's death the action abated. The objection was overruled, and the motion of the appellee sustained, and the action was ordered continued in the name of the executor, to which rulings exceptions were taken. Thereupon the appellee filed a complaint in seven paragraphs. The appellant filed motions to strike out certain parts of each paragraph in the complaint, and to require the appellee to make each par-

agraph in the complaint more certain and specific, which motions were overruled and exceptions taken.

The appellant demurred separately to each paragraph in the complaint, which was overruled, and exception taken.

The appellant answered by general denial.

The cause was tried by a jury, resulting in a verdict of one thousand dollars for the appellee.

The appellant filed a motion for a new trial, which was overruled, and exception taken. Judgment was rendered on the verdict. The evidence is in the record.

The following constitute the assignment of errors:

1. The court erred in continuing the action in the name of the appellee, the executor, and in overruling appellant's motion to abate and dismiss the action because of the death of said William Hunter.

2. The court erred in overruling appellant's motion to strike out parts of each paragraph of the complaint.

3. The court erred in overruling appellant's motion to make the averments of each paragraph of the complaint more certain and specific.

4. The court erred in overruling appellant's demurrers to each paragraph in the complaint.

5. The court erred in overruling appellant's motion for a new trial.

The first contested question under the assignment of errors is the right of the appellee to maintain this action.

The appellant insists that the cause of action abated by the death of the original plaintiff; that by the common law the death of either plaintiff or defendant abated and extinguished all actions and causes of action sounding in tort, and no right of action existed for death wrongfully caused.

There is no doubt that statutory actions for torts abate according to the rules of the common law, the same as common law actions, unless expressly saved by some clause in the statute creating them. *Little* v. *Conant*, 2 Pick. 526; *Jones* v. *Vanzandt*, 4 McLean, 604; *Hooper* v. *Gorham*, 45

Maine, 209. Therefore, if the position of the appellant upon the common law is sound, is it a question in this case of what the common law is upon the subject, but is not the question one of construction under the statute of this State, whether this action survived or whether under the statute it abated by reason of the death of William Hunter, the father of the child? If, under the statute, the action, which was created by statute, survives, then the action is purely statutory, and is not affected by the common law. The provisions of the statute governing this question, and which must determine it, will be found in the following sections:

Section 266. "A father (or in case of his death, or desertion of his family, or imprisonment, the mother) may maintain an action for the injury or death of a child," etc.

Section 282. "A cause of action arising out of an injury to the person dies with the person of either party, except in cases in which an action is given for an injury causing the death of any person, and actions for seduction, false imprisonment, and malicious prosecutions."

Section 283. "All other causes of action survive, and may be brought by or against the representatives of the deceased party, except actions for promises to marry."

Section 284. "When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he lived, against the latter for an injury for the same act or omission."

There is no doubt that under section 266, *supra*, an action is given to the father for an injury resulting in the death of his infant child, the right of action being thus established in the father and being entirely statutory, the action in case of the death of the father abates unless expressly saved by the statutes quoted creating the action.

By section 283, *supra*, it is provided that "All other causes of action survive, and may be brought by or against

the representatives of the deceased party, except actions for promises to marry." By the provision of section 282, *supra*, the exception is made as to cases in which an action is given for an injury causing the death of any person. The conclusion seems clear and inevitable that such actions do not abate, and that the court properly ordered the action continued in the name of the executor.

Counsel for appellant refers us, in support of the argument that the action abated by the death of the father of the child, to *Boor* v. *Lowrey*, 103 Ind. 468. That case was for an injury to the person that did not result in death, and came directly within the meaning of the first clause of section 282, *supra*, that "*A cause of action arising out of injury to the person dies with the person of either party.*" The court in that case says: "It is plainly enacted in the statute, section 282, that 'a cause of action arising out of injury to the person dies with the person of either party, except in cases in which an action is given for an injury causing the death of any person,' " etc. Counsel for appellant also assumes, in argument, that while the statute does not, in terms, provide that the action abated by the death of the father of the child, but the statute not providing against abatement by death, the common law rule that his death did abate the action should govern as to this proposition, it is only necessary to say that the statute clearly provides against abatement by death in cases in which an action is given for causing the death of any person. The action was created by statute, and by express provision of statute is saved from abatement. That the action survived under express provision of statute seems too clear to admit of controversy. *Western Union Tel. Co.* v. *Scircle*, 103 Ind. 227; *Boor* v. *Lowrey, supra; City of Seymour* v. *Cummins*, 119 Ind. 148; *Woodward* v. *Chicago, etc., R. W. Co.*, 23 Wis. 400; *Cregin* v. *Brooklyn, etc., R. R. Co.*, 75 N. Y. 192; *Cregin* v. *Brooklyn, etc., R. R. Co.*, 83 N. Y. 595.

The court did not err in holding that the action did not abate by the death of the father of the child, and in ordering the action continued in the name of the executor.

Under the second and third assignment of error it is alleged that the court erred in overruling appellant's motion to strike out parts of each paragraph of the complaint and to require the appellee to make the averments in each paragraph more specific. There was no error in the rulings on these motions. It is conceded by counsel for appellant that the court correctly ruled on the motion to strike out, and no valid reason is assigned why the motion to make the complaint more specific should have been sustained.

The fourth assignment of error calls in question the complaint. As has been seen, the complaint contained seven paragraphs, and the first, omitting the caption and the formal averments as to the capacity in which the action is prosecuted, the date on which the injury was done, the averments of appellant's corporate existence, organization and line of its said railroad, etc., contains substantially the following allegations:

"That about five o'clock in the afternoon of said day the infant daughter of said plaintiff's testator, named Elizabeth, who lived with and was of the age of twenty months, escaped from the residence of plaintiff's testator, and was on the track of said railroad about six miles southeast of the city of Columbus, in said county, at a private crossing of said railroad known as 'Hunter's Crossing,' on what is known as the Madison branch of said railroad, in Bartholomew county; that the plaintiff's testator at said time resided with his family in a house about two hundred yards southwest of said 'Hunter's Crossing' of said railroad; that said house of plaintiff's testator was surrounded by a fence, part rail and part plank, said fence being of the height of, to wit, six feet, the east line of said fence, in front of said house, being constructed of sawed planks nailed to posts set in the ground, in which said plank fence was a gate, for ingress and

egress, of the same height of said fence, said gate being provided with a good and sufficient lock or catch, which fastened and held said gate to its place when closed; that said Elizabeth could not climb over said plank or rail fence or said gate, and could not get through or under the same at any place except when said gate was opened, and she could not open said gate when shut; that said gate was kept shut at all times, except when plaintiff's testator and the family passed through it, at which times said gate was closed as soon as the person opening the same had passed through; that said Elizabeth was not permitted by plaintiff's testator, or any member of his family, or any one having control or authority over her, to go outside of said inclosure unattended by a competent person to take care of her, and the said Elizabeth had never escaped from the premises before the time above mentioned; that a few minutes before the killing of said Elizabeth by the defendant, as hereinafter stated, said Elizabeth was in the house with plaintiff's testator and his family, and at the same time some neighbor opened the gate and passed into the house of plaintiff's testator, and left the gate open without the knowledge of plaintiff's testator or that of his family at the time, and the said Elizabeth, without being observed by the plaintiff's testator or any member of his family, passed out of said gate before plaintiff's testator or his family knew that it was open, onto the track of said railroad; that plaintiff's testator discovered the absence of said Elizabeth within a few minutes after her escape, and started in quest and pursuit of her, and discovered her on said railroad, and before he could reach her, a certain passenger train, controlled and operated by defendant and in charge of defendant's servants, who were then acting in the line of their employment, was driven over said track where said Elizabeth was, at a high and dangerous rate of speed, from said city of Columbus, the said track being straight and without any obstructions, and the said Elizabeth being in full view of defendant's said servants in charge of said

train, for the distance of, to wit, six hundred feet from where the said Elizabeth was, as said train approached the said Elizabeth ; that after the discovery of the said Elizabeth by the defendant's said servants, by the use of ordinary care, they could have slowed said train and stopped long before it reached said Elizabeth, yet the said servants of the defendant neglected to stop said train, or do anything to avoid a collision with or injury to the said Elizabeth, but carelessly and negligently drove said train at a high and dangerous speed of, to wit, fifty miles per hour, over and upon said Elizabeth, thereby killing and destroying her; that since the commencement of this action the said William Hunter departed this life testate, and by his last will and testament the plaintiff, Joel S. Davis, was appointed the executor thereof ; that by the careless and negligent killing of the daughter of plaintiff's testator, as aforesaid, plaintiff's testator has been wrongfully deprived of her services for nineteen years and four months, which, less her maintenance and support for said time, would be of the value of $10,000, and he has been damaged in that sum."

The charges in all other paragraphs are the same, with the exception that in the second paragraph it is averred that " the said Elizabeth was discovered and in view of defendant's said servants in charge of said train for a distance of, to wit, six hundred feet as said train approached the said Elizabeth, and she, the said Elizabeth, was coming toward said track of said railroad, and crawled thereupon before said train reached within twenty-two hundred and twenty-five feet of where the said Elizabeth was on the track ; that after the discovery of the said Elizabeth by the defendant's said servants, by the use of ordinary care they could have slowed said train and stopped it long before it reached the said Elizabeth, yet the said servants neglected," etc.

In the third paragraph it is averred that the " said Elizabeth being in full and plain view of the plaintiff's servants in charge of said train for a distance of, to wit, six hundred

feet from where said Elizabeth was, as said train approached the said Elizabeth; that after the discovery of said Elizabeth the defendant's said servants, by the use of ordinary care, could have slowed the said train and stopped before it reached the said Elizabeth; yet the said servants of the defendant did not," etc.

In the fourth paragraph it is averred that the child was in view of the train men for a distance of six hundred feet from where she was crawling toward the track, and crawled upon it, " before the train reached within two hundred and twenty-five feet of where the said Elizabeth was on said track; that after the discovery of the said Elizabeth by defendant's said servants, by the use of ordinary care they could have slowed and stopped said train," etc.

In the fifth paragraph it is averred that the child when first discovered, as thereinafter set forth, was not on, but on the side of the track, and " that at said time (the time of the approach of said train), the sun was shining brightly, throwing its rays in front of said train and on said track, thereby rendering objects more plainly visible for a distance of two thousand feet in front of said train; that at said time said Elizabeth was clothed in a dress of bright scarlet, and by the use of ordinary care could have been seen when she was at a distance of two thousand feet from the direction from which the train came; yet the said servants of defendant in charge of said train carelessly and negligently failed to watch said railroad track and keep a lookout ahead, and thereby did not discover the said Elizabeth until the said train was within, to wit, fifty yards of said Elizabeth, when said train could not be stopped in time to avoid injury to her, but said train, running at the high and dangerous rate of speed of, to wit, fifty miles per, ran over and upon said Elizabeth."

There is no substantial difference between the fifth and sixth paragraphs.

The seventh paragraph avers substantially the same as the fifth, except that the child was seen by the train men

within ten feet from the bank, this at a distance of two thousand feet from where she was, and thereafter crawled upon the track and was on the same when the train was within two hundred and fifty feet of her, "and yet said servants of the defendant, when they first saw said Elizabeth, and until said train was within fifty yards of said Elizabeth, neglected to stop said train, or slow said train so that it could be stopped in time to avoid the injury to said Elizabeth, or to reverse said engine to avoid a collision with or injury to said Elizabeth, but carelessly and negligently run and drove said train at the high and dangerous rate of speed of, to wit, fifty miles per hour, to within fifty feet of her, the said Elizabeth, before they made any attempt or effort to stop said train or slow the same so that it could be stopped in time," etc.

It was perhaps unnecessary to set out the complaint at such great length, in view of our conclusion on the demurrers, but its necessity will appear hereafter.

While the complaint did not aver in general terms that the parents were free from contributory negligence, the special facts averred were sufficient on this point.

The averments charging appellants with negligence were also sufficient. We think each paragraph in the complaint stated facts sufficient to withstand a demurrer, and that there was no error in overruling the demurrers to the complaint.

We come now to the consideration of the fifth assignment of error, being the alleged error of the court in overruling the motion for a new trial. All of the causes in the motion for a new trial are elaborately argued. We will first dispose of the cause for a new trial: " That the verdict of the jury was not sustained by sufficient evidence." It is assumed in argument by counsel for the appellant that there was no evidence to sustain the verdict of the jury, and that the court should have given the peremptory instruction requested to return a verdict for the appellant. We have examined the evidence with much care; it is not voluminous, and the following states fully the material facts proven on

the trial: "The residence of Hunter, the father of the child, was on the left-hand side of the railroad going south, in the direction of Madison."

It was enclosed by fences with gate, as alleged in the complaint, which was from fifteen to twenty feet from the residence. From the gate there was a private road to and across the railroad, which was about two hundred yards from the residence. Along the railroad, and on both sides of the private road, and to within about seven feet of the track, there were patches of growing weeds two or three feet high. The space between the weeds and track was graveled, as also the space between the rails. There was a ditch along the railroad some two feet deep, north from the direction of Columbus, passing under the railroad at the crossing of the private road and planked over at the crossing. The evidence does not show how the child went on to the track, but it must have got on to the track either over the plank crossing, or, if in the weed patch, from it; then it crawled into the ditch or went back to the crossing. The only indication on this point is that the child had a lump of gravel in in its hand. The train going to Madison from Columbus, on its regular time, struck the child on the crossing on the side next to Hunter's residence. The view was unobstructed, as alleged in the complaint, except as to the standing weeds. There was no averment in the complaint as to the weeds. There was a weight attached to the gate that swung it to and caused it to latch itself. It may be fairly inferred from the evidence that the child could not reach the latch on the gate, and was not missed, and was with its mother until "a few minutes" or a "very short time" before the accident, and that due care had before that time been exercised to prevent the escape of the child. The evidence did not establish the fact that the gate was at all times kept shut, as averred in the complaint. The evidence of Mrs. Hunter was that they always aimed to keep it closed. The child was dressed in red, had walked from three to five months, was

somewhat slow in motion, and crawled over obstructions. Soon after the accident, and just before the trial of the case, experiments and tests were made by persons who testified on the trial by placing a red piece of cloth in the weeds and dragging it out into the center of the track, by which a person standing or on horseback, at a distance of seven hundred yards, could readily see the cloth moving, and that a child could be distinguished, as such, from a hog or dog, or any other animal at that distance. •

Mrs. Hunter and her mother were in the house, and the child had been with its mother just a few minutes before the accident, and the father and Joel S. Davis were sitting in the rear of the house; and, hearing an unusual whistle and the train dashing around the corner, Davis saw it about sixty yards from the crossing, as he thought. A witness for the appellee, who had experience in running engines, put the distance at which the train could have been stopped, at from two hundred and fifty to three hundred yards, when running at the rate of thirty miles an hour on a dry day and slightly up grade, as this was, with a train consisting, as this did, of an engine, one coach and a baggage car.

Joel S. Davis stated that from his knowledge of the child, he was satisfied that it could not have crawled from the weeds over the gravel and into the center of the track inside of ten minutes, and two minutes from the bridge, at a point on the road seven feet back, where the weeds commence, to the railroad.

Joseph Hunter, another witness, put it at two or three minutes from the weeds over the gravel to and over the rails.

There is no evidence that any other persons passed through the gate, or were at Hunter's residence during that afternoon, except Joel S. Davis and wife, grand-parents of the child; nor does the evidence show how long they had been there. From Mrs. Hunter's testimony it appears that her mother was just getting ready to start home, when the child escaped, and she was in the room talking with her.

Joel S. Davis also testified that Mr. Hunter and he were sitting at the west end of the house talking all the time. They sat there, he didn't know how long, but had been there not a great while at least, and it was getting toward night; that when he and his wife went to Hunters' they went in through the gate ; did not know whether it was opened or not; did not know whether they opened the gate and closed it, or whether it was opened when they went there.

The child was nineteen months old.

The engineer testified for the appellee that the child was not on the track when he first saw it, but supposed it was on the track when he struck it. He turned his back toward it.

The foregoing is an accurate statement of the material and controlling facts in the case, as made by the appellee :

On behalf of the appellant the engineer testified that he had been running an engine the last time since 1871 and a passenger engine since 1878. At thirty miles an hour it would have required from three hundred to three hundred and fifty yards to stop the train. On that occasion the train was behind time and running at from forty to forty-five miles an hour ; when about two hundred yards from the crossing, witness saw something red in the weeds.

"The minute I saw the object, I shut off steam and put up brakes, took up slack, and it wasn't but a few seconds until it crawled out of the weeds ; I saw what it was ; I saw it was a child. I immediately reversed the engine, threw on the air in full and gave her sand, and turned my face ; but, hold on, I am a little ahead of my story.

"Q. What happened to you about turning your face. Tell all about it ? A. It crawled on the track, or just on the inside rail on my side. It turned round and looked at me, and I stepped off on the foot-board. I knew I was going to hit it, and didn't want to see it. The child was about two hundred yards from the crossing when first seen in the weeds. The work of shutting off the steam, etc., and of reversing the engine, when the child crawled out, was

quicker than the time to tell it. All was done that could be done to avoid the accident. At forty miles an hour it would take between four and five hundred yards to stop the train. The weeds were on both sides of the track."

This witness on cross-examination testified that one eye had been burnt, and that the sight was bad for a short time; that one was a little bad yet, and the other was as good as ever. In answer to a question by the appellant, he stated that, before and since the accident, his eyes had been examined, and proved to be good.

There was evidence, without conflict, that on account of the vibratory motion of the locomotive, an object could not be as well seen or distinguished from it, as from a stationary point of view. There was, also, evidence by competent engineers, sustaining the evidence of the engineer in charge of the train as to the distance required to stop the train in running at the rate of thirty miles an hour, and, also, the distance required to stop the train in running at the rate of forty or forty-five miles an hour.

The fireman having died before the trial, the engineer was the only witness touching the alleged negligence of the appellant.

It is proper to say there was no charge in the complaint of negligence in permitting growing weeds to obstruct the view, or that appellant was negligent in keeping in its employment an incompetent engineer, either because of defective vision or otherwise, and not having been charged in the complaint, negligence could not be imputed to appellant because of these facts.

The question of the appellant's liability must be determined from the evidence within the issues in the case.

While the question of contributory negligence of the parents of the child is not free from doubt, we do not think it necessary to determine that question.

It does, however, seem clear to us that there was an entire lack of evidence to charge the appellant with negligence un-

der the allegations in the complaint, and that the alleged negligence could not be made out without the testimony of the engineer. It may be granted that the child could have been as easily seen or recognized from the engine, with its vibratory motion, as the red cloth was seen by those who " experimented " to ascertain that fact; that it was primarily the duty of the engineer to keep a look out for the child, and it may be assumed that the child was with its mother, and its escape not discovered until " a few moments," or a " very short time " before the accident. But upon the question as to the time the child was absent, the evidence is not satisfactory, but whether the time was long or short is immaterial. There is no evidence that the child was, in fact, either in the weeds or on the road, where the weeds were on both sides, or on the space between the weeds and the track, or on the track at a time when a train, running at any rate of speed, could have been stopped before running upon it, to say nothing of a speed of forty miles an hour. The child was somewhere between the house and the railroad, but where it, in fact, was at any time before it made its appearance on the open space between the weeds and the track the evidence for the appellee wholly fails to show, and such was essential to charge the appellant with negligence; the evidence of the appellee on this point so failing, no negligence on the part of the appellant was shown. And while it may be conceded that the evidence of the witnesses who experimented with the "red cloth" conclusively showed that the child could have been seen a distance of seven hundred yards, the evidence wholly fails to show that the child was in fact there. There was no evidence in conflict with the engineer on this point, but in respect to where the child in fact was, and the distance from it when the object was first discovered, the evidence of the engineer stands alone, and in fact was all the evidence in the cause upon this material and important point. It can not be disregarded, but must control. *Indianapolis, etc., R. W. Co.* v. *Watson,* 114 Ind. 20.

The Pennsylvania Company v. Davis, Executor.

What was held in this case, and particularly in the opinion on the petition for rehearing, is directly in point upon the question under consideration in the case at bar, and fully sustains our conclusions as to the evidence. It was said in that case : " Where, as here, there is only one witness on a pivotal point, it is our duty to apply the law to his testimony, and if, under the law, the testimony is not sufficient to sustain a recovery, so adjudge. Where there is no conflict of testimony, the court must necessarily decide the legal effect of the testimony in the record. * * *

" The question of negligence is never one exclusively of fact. The jury find the facts, but if from the facts one inference only can be drawn, and that is that there was negligence, it must be so adjudged as matter of law; or, conversely, if it can be clearly affirmed as matter of law that there was no negligence, the court must so declare. In no case where negligence is the issue does the court entirely abdicate its power, for as to the law it must always rule, although, in some instances, the jury ultimately decide whether there is, or is not, negligence, but in every case the court must declare the law." See, also, *Indianapolis, etc., R. R.* v. *Overton*, 117 Ind. 253.

After having carefully considered the evidence in all of its material facts, and having in view the settled rule that if there is some evidence to sustain the finding, it is not the province of this court to weigh the evidence or interfere with the finding, we are constrained to hold in this case that the evidence did not tend to sustain the charge of negligence.

Other causes in the motion for a new trial calling in question the assessment of damages and the giving and refusing certain instructions are discussed, but as we have reached the conclusion that the cause must be reversed on the evidence and as these questions may not arise on another trial it is not necessary to determine these questions in this opinion.

The judgment is reversed, with instructions to grant a new trial with further proceedings in accordance with this opinion at appellee's costs.

Filed Dec. 8, 1891; petition for a rehearing overruled Feb. 20, 1892.