## HOLLINGSWORTH, ADMINISTRATOR, *v.* THE CHICAGO, INDIANAPOLIS & LOUISVILLE RAILWAY COMPANY.

[No. 19,435. Filed December 16, 1902. Rehearing denied March 17, 1903.]

RAILROADS.—*Injury to Brakeman.—Complaint.*—An averment in a complaint against a railroad company for the death of a brakeman, caused by a low bridge, that defendant had permitted its signals known as "telltales," to warn brakemen of the proximity of the bridge, to become worn and out of repair, is mere surplusage, it not being charged that deceased had any knowledge of telltales, or that he knew what they were intended for, or that they are in common use on railroads as a means of warning. *p. 263.*

MASTER AND SERVANT.—*Negligence.—Assumption of Risk.—Railroads.* —A recovery can not be had against a railroad company for the death of a brakeman caused by a low bridge which defendant negligently maintained, where it appeared that decedent had been many times warned, and knew from his own observation, of the dangerous condition of the bridge and voluntarily continued in the employment without any promise on the part of defendant to abate the danger. *pp. 261-266.*

From Clark Circuit Court; *J. K. Marsh,* Judge.

Action by Marshall P. Hollingsworth, administrator of the estate of Wm. A. Francis, deceased, against the Chicago, Indianapolis & Louisville Railway Company. From a judgment for defendant, plaintiff appeals. Transferred from Appellate Court, under §1337o Burns 1901. *Affirmed.*

*M. W. Fields, C. L. Jewett, H. E. Jewett, C. A. McRoberts* and *A. P. Twineham,* for appellant.

*E. C. Field, H. R. Kurrie, W. S. Kinnan* and *M. Z. Stannard,* for appellee.

HADLEY, C. J.—Appellant, as administrator of William A. Francis, deceased, prosecutes this action to recover damages on account of the death of his decedent, alleged to have been caused by the negligence of appellee.

The only error assigned calls in question the action of the trial court in sustaining appellee's motion for judgment in its favor on the answers of the jury to interrogatories, notwithstanding the general verdict in favor of appellant.

The negligence charged is the constructing and maintaining of an overhead bridge at a point where a highway crosses appellee's railroad near the town of Putnamville; the charge being that the bridge was constructed, and had been so maintained for many years, at such a height from its track that there was less than five feet of space between the bridge and the top of the box freight-cars used by the company, when said cars were moving under the bridge; that the brakes to said cars were so constructed that they could be operated only by brakemen standing on the top of the cars; that the space between the top of a moving freight-train and the bridge was so limited that it was impossible for a brakeman to stand or operate the brake on the top of a box car, while the same was passing under, without being struck by the bridge, and this appellee well knew, because previous to the death of the intestate, at different times, nineteen other brakemen in its employ had been killed or injured by coming in contact with the same bridge while in the performance of their duties on the top of freight-

trains running thereunder; that, on account of its danger-
ous character, it was the duty of the company to erect at
a proper distance from the bridge, signals known as "tell-
tales," to warn brakemen of the proximity of the bridge,
and the company, in erecting such telltales, had negligently
constructed them so high above the tracks and cars, as to be
ineffective, and negligently permitted the ropes of which
said signals were composed to become and remain wound
around the beam to which they were attached, and negli-
gently permitted the ropes to become and remain worn off
at the ends, and so frayed and unraveled that they were,
and had been for a long time, to the knowledge of the com-
pany, wholly insufficient as a means of warning to the
brakeman.    It is further alleged that appellee's said rail-
road runs from New Albany, Indiana, to Chicago, Illinois;
that the decedent had, but two days before his death, been
employed by appellee as a brakeman on its freight-trains
running between New Albany and Chicago, and was killed
while performing his duty on the top of a box car, by being
carried while on a moving train into violent contact with
said bridge; that, at the time of the fatal accident, intestate
was wholly ignorant of the dangerous character of the
bridge, and ignorant of its position and location, and of the
fact that appellee had permitted the telltales to get out of
repair and become inadequate to give warning of the prox-
imity of the bridge.    The answer is a general denial.

The facts disclosed by the answers to interrogatories, in
substance, are these:    At the time of his death the deceased
was thirty-six years of age, five feet eight inches high, was
employed by the company as an extra brakeman June 14,
1899, and continued in service as an extra brakeman until
July 7, 1899.  On five occasions prior to his death he
passed under said bridge in the daytime, and was warned
two or three times of its dangerous character by the con-
ductor.    A week or ten days before his death he was on a
south bound train that stopped at Putnamville to discharge

freight.   As the train started southward, while he was climbing up the ladder on the side of a box car to the top, the conductor warned him that unless he laid down, the overhead bridge—which was near by—"would cut him off at the pockets," and, heeding the warning, Francis prostrated himself on the top of the car while the same passed under the bridge.   Francis had opportunity after his employment, on several occasions, as he passed over the road, to ascertain that the bridge at Putnamville was a low bridge, and dangerous to one standing on a box car while it was passing under it.    At 9 o'clock a. m. on July 7, 1899—the same being a bright morning—the deceased, being on a north bound train, while sitting on a brake-wheel which extended two feet and one inch above the top of the car, with his back to the bridge, with his hat over his eyes, and head drooped as if asleep, was struck by the bridge and killed.   Within a distance of 130 feet there was nothing to obstruct a view of the bridge, and if the deceased, within that distance, had looked,—which he did not do, though he was not so engaged as to prevent it,—he might have seen the bridge and avoided the injury.   To warn brakemen of the proximity of the bridge, the company had previously, at a point 240 feet south of the bridge in question, constructed telltales, composed of ropes one inch in diameter, eight inches apart, suspended in vertical sections from a beam across, and twenty-three feet above, the track, so as to touch and drag harmlessly over the person of a brakeman who happened to be on the top of a box car; but the company at the time of the injury had permitted the telltales to become frayed, worn off, and so shortened as to be of inadequate length for the purpose designed, while if they had been of proper length and in proper condition Francis would probably have been warned of the nearness of the bridge.   That he lost his life on account of the dangerous character of the bridge, and the imperfect condition of the telltales.   The deceased was in a proper place and in the

discharge of his duties when killed, and was not able to escape after he discovered the nearness of the bridge.

Counsel for the company admit that both the general verdict and the answers to the interrogatories establish the negligence of appellee as alleged, and furthermore, that the general verdict is a finding of all the material facts against appellee, and that the same must stand unless the answers to the interrogatories state the existence of facts that are in irreconcilable conflict with the general verdict. These admissions remove from the case all the questions discussed except that relating to the assumption of risk by the intestate.

The complaint is constructed upon the one theory,—that the bridge was erected and maintained at a height so low that a brakeman could not safely ride thereunder on top of a box car, and that such condition was known to appellee and unknown to the decedent. The averments concerning telltales do not pretend to constitute an independent, substantive charge of negligence, but their insufficient condition is set forth as an element entering into, and forming a part of, the dangerous character of the bridge. But for this purpose, as we view the complaint, they amount to nothing more than surplusage. It is nowhere alleged that the deceased had any knowledge of telltales, or that he knew what they were intended for, or that they are in common use on railroads as a means of warning, or that he knew appellee had erected, or pretended to erect, any warning device at its Putnamville bridge. We can not presume such knowledge, in aid of the complaint; and without knowing something about telltales, their object and purpose, or that some such device was in common use on railroads as a means of warning against low bridges, it cannot be assumed that the deceased was thrown off his guard or deceived by their absence, in his approach to the bridge. It would not do to say that he was misled by the absence of that which he did not know, or have any cause to believe

existed. We must therefore eliminate from consideration, as not being within the issues, the discussion concerning the impaired telltales.

Certain general principles have been so often declared by this court that we deem it unprofitable to cite cases. (1) A railroad company owes to its employes the duty to observe reasonable care in the construction of its road, including all lateral and overhead structures that affect their safety; and if it fails to construct and maintain its overhead bridges of sufficient height to make them safe for its employes who are required to work on top of moving trains as they run under them, the company is guilty of actionable negligence to one who without fault is injured thereby. (2) A degree of peril being necessarily incident to service on a railroad train, one accepting such service impliedly agrees to take upon himself the risk of all ordinary and usual dangers that attend such service. (3) An employe has the right to presume that his employer has performed all those duties which the law imposes upon him, and the former does not, therefore, assume a risk which arises out of the latter's negligence. (4) But it is the duty of an employe, in all situations, to be vigilant for his own safety; and when the negligence of his employer has produced an extra hazardous condition, which has become known to the employe, or the dangerous condition is so obvious that an ordinarily prudent person would have seen it, and such employe thereafter, with knowledge of the extent of the peril, voluntarily enters upon or continues in such employment without the promise of the employer to remove it, he will be held to have assumed the risk, and without the right of recovery against the employer for any injury suffered therefrom. *Louisville, etc., R. Co.* v. *Kemper,* 147 Ind. 561; *Louisville, etc., R. Co.* v. *Sandford,* 117 Ind. 265; *Indianapolis, etc., R. Co.* v. *Watson,* 114 Ind. 20, 5 Am. St. 578,

View as we will the conduct of appellee in maintaining the bridge at Putnamville, which in the previous twenty-five years had caused the death or injury of nineteen of its employes, according to the complaint, we are thereby furnished with no legal warrant to excuse the decedent, if, with knowledge of the dangerous character of the bridge, he voluntarily continued to encounter it. And this the answers to the interrogatories show that he did. He had passed the bridge five times in daylight. Two or three times he had been warned by those in charge of his trains, and ten days before his death, when but a short distance from the bridge, and about climbing to the top of a car, he received from the conductor such pointed caution as induced him to lay down upon the top of the car while the train passed under the bridge. These several warnings, and the observations that he necessarily must have made as he lay prostrate upon the car as the same passed under the bridge, were sufficient to impress one of ordinary understanding and caution with the gravity of the danger to one caught on top of a moving train at that place. Having been thus acquainted with the bridge and its hazards, he was no longer in a position to be deceived by it, or to be protected by the presumption that the bridge had been safely constructed. He then knew as much as his employer about its dangerous character; they were then on an equal footing, and the voluntary continuance of the deceased in the employment, without assurance from appellee to abate the danger, was an assumption of the risk.

It is no justification of his conduct to say that appellee's railroad was more than 100 miles long, and that the deceased was an extra brakeman, had been but five times over the road in daylight, and had not had sufficient time and opportunity to become acquainted with the many varying physical aspects of the long line of road, so as to discern, by the exercise of caution, the proximity of the bridge. The

answers show that he did know, or had sufficient opportunity to know,—which amounts to the same thing,—that somewhere on the line of the road was a dangerous overhead bridge; and thus knowing, he was found to approach the bridge sitting on a brake-wheel, with his back to the forward end of the train, with his head drooped, and his cap pulled over his eyes. This apparently thoughtless conduct, however, is unimportant. Having, by continuing in the service after notice of the danger, impliedly agreed to take his chances of injury by the bridge, his observance of caution and care in approaching it would not have strengthened appellant's claim.

The issue tendered by the complaint is that the intestate did not know of the dangerous bridge. The answers of the jury are to the effect that he did know of it. If he did know of it, as we have seen, and voluntarily continued to encounter it, his next of kin can not recover, and this universal rule arrays the answers to the interrogatories in irreconcilable conflict with the general verdict for appellant.

We find no error. Judgment affirmed.