Filed June 22, 1893.

————————◆————————

No. 876.

The Cleveland, Cincinnati, Chicago and St. Louis Railway Company v. Johnson.

Verdict.—*General.*—*Motion for Judgment on Answers to Interrogatories Non Obstante Verdicto.*—*When Must Fail.*— A general verdict is not controlled by answer to interrogatories, unless such answers are irreconcilable with the general verdict. Where, however, a fact is found, in answer to an interrogatory, which precludes a recovery at all, the fact so found controls the general verdict. But when the facts found are only such as to preclude a recovery upon one branch of a case, and no facts are found which would preclude a recovery upon another branch, it will be presumed that the jury based their verdict upon the branch as to which no facts were found inconsistent with the general verdict.

From the Knox Circuit Court.

The Cleveland, Cincinnati, Chicago and St. Louis Ry. Co. v. Johnson.

*J. T. Dye, M. J. Niblack, B. K. Elliott* and *W. F. Elliott,* for appellant.

*T. R. Cobb, G. G. Reily* and *J. W. Emison,* for appellee.

Ross, J.—The appellee sued the appellant to recover damages for personal injuries received while a passenger on one of its passenger trains which was derailed and thrown down a high embankment. The jury returned a general verdict in favor of the appellee, assessing his damages at fifteen hundred dollars, and also returned answers to numerous interrogatories submitted by both parties.

The complaint—after the formal allegations that the appellant was a common carrier of passengers, and that the appellee was a passenger on one of its passenger trains, consisting of an engine and baggage car, two passenger coaches and a box car, in which fruit was being transported, which ran off the track, and that the appellee was thereby thrown from his seat against the side and top of the car, greatly injuring him—contained specific allegations of the causes which occasioned the accident.

The specific allegations are as follows:

"The said car ran off said track by reason of the following causes, namely:

"The railway track, at the place where the car so ran off, was imperfectly and negligently fastened to the cross-ties. The cross-ties were rotten and insufficient by reason thereof to hold the spikes and other fastenings by which the rails were held to said ties. Said railway embankment was not ballasted sufficiently to hold said ties in place. Said ties were so rotten that they at once broke in small pieces when said cars ran off the rails and upon said ties, and thereby threw said cars off the railway em-

bankment and turned said cars over as aforesaid. Said fruit car was not properly constructed to be run in a passenger train, being much too short and having wheels too small. Said fruit car was not furnished with an air brake, but, on the contrary, had only a hand brake, and that of improper material, and so constructed that it dropped down beneath said car immediately before said car went off the track, and dragged upon the cross-ties on said track, and thereby jerked said ties out of place, and displaced the rails attached thereto, and threw said fruit car and the car in which the plaintiff was riding, as aforesaid, off the said track, as aforesaid. Said fruit car was not properly and securely fastened to the trucks thereof, but was so loosely attached thereto that, as it ran upon said railway track, it wabbled from side to side, and finally said wabbling threw the same from the track and tore the ties loose from said track, and, in consequence thereof, the car in which the plaintiff was riding was thrown from the track and turned over, as aforesaid, and he sustained said injuries wholly from the negligence and fault of the defendant, and from no negligence or fault of his.''

Plaintiff further says ''that at the place where said train so ran off the track the same was a steep grade, sloping downward in the direction the train was then running at the time of the injury aforesaid, and said train was then running at great speed, to wit, forty-five miles or more per hour, and said great speed contributed to said injury.''

The appellant assigns but one error in this court, namely: ''The court erred in overruling appellant's motion for judgment in its favor upon the special findings of the jury, notwithstanding the general verdict.''

It is firmly and clearly settled, so much as to require no citation of authorities, that a general verdict is not

controlled by answers to interrogatories, unless such an-swers are irreconcilable with the general verdict. Where a fact is found, in answer to an interrogatory, which precludes a recovery at all, the fact so found controls the general verdict. But when the facts found are only such as to preclude a recovery upon one branch of a case, and no facts are found which would preclude a recovery upon another branch, it will be presumed that the jury based their verdict upon the branch upon which no facts were found inconsistent with such general verdict.

The appellee averred, in his complaint, many things which caused the accident resulting in his injury. It was not necessary, in order to entitle him to recover, that he prove all the causes which brought about his injury.

This leads to the inquiry: Do the answers to the in-terrogatories preclude a recovery upon every branch?

The answers to the interrogatories negative the allega-tions of the complaint as to the air brake, the construc-tion of the fruit car, the grade of the track, and the speed of the train; hence, the general verdict can not stand upon either of these branches. It is clear, therefore, that the general verdict, if it can be sustained at all, must rest upon some other charge in the complaint. The remaining charges are: "The railway track, at the place where the car so ran off, was imperfectly and neg-ligently fastened to the cross-ties. The cross-ties were rotten, and insufficient by reason thereof to hold the spikes and other fastenings by which the rails were held to said ties. Said railroad embankment was not ballasted suf-ficiently to hold said ties in place. Said cross-ties were so rotten that they at once broke in small pieces when said cars ran off the rails and upon said ties, and thereby threw said cars off the railway embankment, and turned said cars over as aforesaid. Said fruit car was not furn-ished with an air brake, but, on the contrary, had only

a hand brake, and that of improper material, and so constructed that it dropped down beneath said car immediately before said car went off the track, and dropped upon said cross-ties on said track and thereby jerked said ties out of place and displaced the rails attached thereto and threw said fruit car and the car in which plaintiff was riding as aforesaid.''

The interrogatories propounded by the plaintiff, bearing upon these questions, are as follows:

''Int. 4. Was said fruit car furnished with a hand brake negligently attached thereto, so that one of the shoes thereof dropped off, and the brake rod and beam thereof dropped to the ground as said car ran along said track, and thereby caused said car to be thrown from said track? Ans. Yes.

''Int. 5. Was said railway, on said 17th day of July, 1889, constructed of ties on said track, which were rotten and so imperfect that the same would not hold the spikes securely which fastened, or were intended to fasten, the rails to the cross-ties? Ans. Yes.

''Int. 6. Did the fruit car in said train run off said track at the day aforesaid, and did the rotten ties, if the same were rotten, contribute to said car running off the same? Ans. Yes; but rotten ties did not contribute to car running off said track.

''Int. 7. Was the rotten condition of said cross-ties perceptible, so that their rotten condition could have been discovered by an inspection thereof before said car so ran off said track? Ans. Yes.

''Int. 8. Was said brake on said fruit car so that it could be seen and the construction thereof discovered before said car ran off said track? Ans. Yes.

''Int. 9. Did the running off of said fruit car cause the passenger car in which the plaintiff was riding as a passenger to run off the track? Ans. Yes.

The Cleveland, Cincinnati, Chicago and St. Louis Ry. Co. v. Johnson.

"Int. 10. Was said fruit car so constructed as to be safe to run the same in a passenger train? Ans. Yes."

And the following of the interrogatories submitted by the defendant:

"Int. 4. Were not the injuries set forth in the complaint caused by the derailment of the fruit car, or other car, at a point at least three hundred feet south of where the track was torn up? Ans. Yes.

"Int. 5. Did not said derailed car, after it was derailed upon the cross-ties, travel for a distance of at least one hundred feet before it was turned over? Ans. Yes.

"Int. 6. Was not the fruit car, hauled in the train upon which plaintiff was riding, carefully inspected and examined by car inspectors, before it was put in the train on the morning of the day of the accident, at Cairo, Ill.? Ans. Yes.

"Int. 7. Were not the car inspectors who examined said car inspectors of skill and experience? Ans. Yes.

"Int. 8. Was not said fruit car a new car constructed to be used in rapid transportation of southern fruit in express trains? Ans. Yes.

"Int. 9. Was not said fruit car constructed after the most approved method of building fruit cars? Ans. Yes.

"Int. 10. Was there any defect in the construction of said fruit car which was apparent upon a careful inspection of the same? If so, what was such defect? Ans. No.

"Int. 12. Was not said fruit car furnished with a hand brake, and was not said hand brake attached to the trucks after the most approved manner of attaching brake beams to trucks? and if there was any defect in the attachment of the brake beams to the trucks, what was such defect? Ans. Yes.

"Int. 13. Was not said brake in proper and safe con-

dition, so far as could be discovered by careful and skillful inspection at Cairo, Ill., when said car was put into the train?   Ans. Yes.

"Int. 14.  Were not the brake beams attached to the trucks of the fruit car after the accident, and were not the screws that held the brake shoe in its place also in place after the accident, and the brake shoes attached to the brake heads, and the latter attached to said brake beams after the accident?   Ans. No.

"Int. 20.  Did the brake beam fall from the trucks before said fruit car was derailed at a point several hundred feet south of the place where the track was torn up? Ans. No.

"Int. 21.  Was said car derailed by the falling of the brake shoe in front of the wheels of the car?   Ans. Yes.

"Int. 22.  Were not the brake shoes on said fruit car perfect, so far as could be ascertained by careful inspection when the car was put into the train at Cairo, Ill.? Ans. Yes.

"Int. 23.  Was there any defect in said fruit car, or in the condition of said fruit car, apparent upon a careful inspection at the time it was put into the train, which rendered it unsafe to run the same in said train?   If so, what were said defects in the construction or condition of said car that were so apparent upon careful inspection?   Ans. No.

"Int. 24.  Did not the track and the cross-ties remain in place and position at the point where said fruit car first left the track, and for a distance of at least one hundred feet north of that point?   Ans. Yes.

"Int. 25.  Was not the track, including the rails and ties, in place and undisturbed after the accident at the point where the fruit car first left the track and for a distance of at least one hundred feet north and south of that point?   Ans. Yes.

"Int. 26. Did the condition of the track in any way contribute to cause the derailment of the fruit car at such a point at least three hundred feet south of the place where the track was torn up by the wreck? If so, in what way did the condition of the track cause the derailment of the car? Ans. No.

"Int. 27. Did the condition of the cross-ties at the point of derailment in any way contribute to cause said car to leave the track? If so, in what way did the cross-ties contribute to derail the fruit car at such a point, at least three hundred feet south of the point where the track was torn up by the wreck? Ans. No.

"Int. 28. Were not the cross-ties and the rails firmly in position at the place where the wheels of the car first left the track, and for a distance of at least one hundred feet north and south thereof after the accident? Ans. Yes.

"Int. 34. If the fruit car had not been derailed, would the accident have occurred? Ans. No.

"Int. 35. What was the cause of the derailment of the fruit car? Ans. The falling of the brake shoe.

"Int. 36. Did not the conductor of the train examine said fruit car when the train stopped for water at Grayville, about fifteen miles from the place where the accident occurred? Ans. Yes.

"Int. 37. Were there any defects in the condition or construction of said fruit car at the time it was so examined by the conductor at Grayville? If so, what were they? Ans. No."

It is contended by appellant's counsel that the answers to these interrogatories negative every allegation and inference that there was anything in the track, rails or ties which caused or contributed to the accident, by reason of which the appellee was injured.

The facts, as disclosed by the answers to the inter-

rogatories, are, that on the 17th day of July, 1889, the train upon which the appellee was a passenger, consisting of several cars, among which was a box car in which fruit was being carried, and which in position in the train preceded the passenger cars, in one of which the appellee was riding, at some point between Cairo, Illinois, and Vincennes, Indiana, was derailed and the appellee injured; that the fruit car was derailed by one of the shoes of the hand brake on said car falling in front of the wheels; that, after the fruit car ran off the track, the train ran about three hundred feet when the passenger car in which the appellee was riding ran off the track. At the point where the fruit car was derailed, the track remained firmly in position, and neither the condition of the cross-ties nor the track caused the fruit car to be derailed; that the derailment of the fruit car caused the passenger car in which the appellee was riding to run off the track, and that if the fruit car had not run off the track the accident would not have happened.

The complaint charges, that the car in which the appellee was riding ran off the track and turned partially over, because the railway track, at the place *where* the car so ran off, was imperfectly and negligently fastened to the cross-ties; that the cross-ties were rotten and insufficient to hold the spikes and other fastenings; that the embankment was not ballasted sufficiently to hold the ties in place, and, when the cars ran off the rails, the ties were so rotten that they broke in small pieces, throwing the cars off the embankment, and turning the one in which appellee was riding partially over.

Do the answers to the interrogatories negative these allegations of the complaint? By their general verdict, the jury presumably have found every material allegation of the complaint to have been proven, and that pre-

sumption prevails in this court, unless the contrary is shown by the answers to the interrogatories.

The jury, by their general verdict, have found that the fruit car was derailed by the falling of a brake-shoe, and that neither the condition of the cross-ties nor of the track contributed to its derailment, but they do not find that, at the place where the passenger car in which the appellee was riding, ran off the track, the track was not imperfectly and negligently fastened to the cross-ties, the cross-ties not rotten and were sufficient to hold the spikes and other fastenings; that the embankment was ballasted sufficiently to hold the ties in place, and that at that point the ties did not break, throwing the cars off the embankment.

The jury, in their answers to the interrogatories, have found that, at the point where the fruit car was derailed, and for a distance of a hundred feet toward where the passenger cars were derailed, the track, including the rails and ties, remained in place and undisturbed, but those facts do not rebut the presumption raised by the general verdict as to the condition of the track at the point where said passenger cars ran off the track. The issue is as to the condition of the track, rails, and ties at the time and place when and where the passenger cars ran off the track. Had the passenger cars run off the track at the point where the fruit car was derailed, or at any point within the distance in which the jury find the track remained in place and undisturbed, these findings would overcome the general verdict on that branch of the case, but the interrogatories, though very meager, show that it was about three hundred feet beyond where the fruit car was derailed that the passenger cars ran off the track and the appellee was injured. The facts found specially in answer to the interrogatories do not preclude the idea (and it is one fairly to be presumed) that the fruit car, after

it became derailed, ran along upon the cross-ties for nearly three hundred feet, when the train reached the point where the track was imperfectly and negligently fastened to the cross-ties, the cross-ties rotten and insufficient to hold the spikes and other fastenings, and the embankment not ballasted sufficiently to hold the ties in place, jolting along on these rotten cross-ties, broke them, displacing the rails which were imperfectly and negligently fastened to the cross-ties, and the fruit car, for that reason, caused the passenger car in which the appellee was riding to run off the track. This presumption is not rebutted by the answers to the interrogatories.

It is clear, therefore, that the answers to the interrogatories do not negative all of the allegations of the complaint as to the causes which occasioned the accident.

Judgment affirmed.

Filed April 25, 1893; petition for a rehearing overruled Sept. 21, 1893.