Davis, J.
This action was instituted by appellee to *566 recover damages for personal injuries alleged to have been sustained by him, without fault on his part, through the negligence of appellant. On trial by jury a general verdict was returned in favor of appellee for two thousand dollars, and also answers to twenty-five interrogatories.
The court, at special term, sustained appellant’s motion for judgment in its favor on the answers to the interrogatories, notwithstanding the general verdict. On appeal to general term, this judgment was reversed. The facts in brief, as shown by the complaint, the general verdict, and the answers to the interrogatories, are as follows: On the fourth day of December, 1888, appellee was employed by appellant as a brakeman in handling freight cars, on appellant’s tracks, in and about Indianapolis. Appellant furnished appellee with a lantern, which was necessary to his work, during night hours, in making couplings of freight cars, giving signals and the performance of other duties. This lantern appellee found was defective and liable to go out, and reported this fact to appellant’s superintendent, and asked for a good and safe lantern. The superintendent informed appellee that th e company had ordered a new supply of lanterns, and directed appellee to continue at his work, and promised that he should have a new and safe lantern just as soon as they arrived, and said he was expecting them every day. Appellee continued to report to appellant’s superintendent each day the fact that the lantern with which he was working was defective and dangerous, and at each resport was promised a new and safe lantern and requested to continue at his work and do the best he could until the new lanterns arrived. Appellee, relying upon the promise of appellant to furnish him a new, suitable and safe lantern, and believing that there was no great, immediate, or imminent danger in using said *567 old and defective lantern, complied with the direction of •appellant. ■
On the night of the fifth day of appellee’s employment the light of the lantern went out while appellee was engaged in coupling cars, and the injury occurred which resulted in the loss of his arm; that on each preceding night while using it in the ordinary and customary way the light in said lantern had gone out, but whether it was then being used in giving signals or the performance of other duties, how long the lantern was so used, or how often it went out on each night does not appear. There is no express finding that the lantern had ever been, before the injury, used in coupling cars after night, but there is a finding that there was no evidence that the light in the lantern had ever gone out before this occasion while appellee was using the same between the cars for the purpose of coupling them, and there is a finding that it was dangerous for a person to attempt to couple cars with a lantern, the light of which was accustomed to go out in the ordinary use of the lantern, and that the danger was great, apparent and continuous, while the lantern was being so used, and there is another finding that an ordinarily cautious and prudent man would not knowingly continue to use for coupling cars by night a lantern, the light of which in the ordinary use of the lantern, for such purpose, had continuously theretofore been accustomed to go out.
The only question presented for our consideration is whether appellant was entitled to judgment upon the answer of the jury to the interrogatories, notwithstanding the general verdict.
The jury by their general verdict have presumably found every material allegation of the complaint to have been proven, and that presumption conclusively prevails in this court unless the contrary is clearly shown *568 by the answer to the interrogatories. Cleveland, etc., R. W. Co. v. Johnson, 7 Ind. App. 441.
The special findings override the general verdict only when both can not stand, and this antagonism must be apparent upon the face of the record, beyond the possibility of being removed by any evidence legitimately admissible under the issues, before the court can be successfully called upon to direct judgment in favor of the party against whom a general verdict has been rendered. Amidon v. Gaff, 24 Ind. 128.
The rule is well settled that an employer is bound to use ordinary care to provide safe appliances for his employes; that the employe has the right to act upon the assumption that his employer has used, and will use such care, until he acquires knowledge of the defect, or by the exercise of .reasonable care might acquire such knowledge; that the employe who continues in the service after notice of the defective appliance assumes the risk attending the use of such defective appliances, unless the master promises to remedy the defect. Indianapolis, etc., R. W. Co. v. Watson, 114 Ind. 20.
The promise of the master is the basis of the exception. The promise of appellant to provide appellee with a new lantern within the reasonable time necessary for its performance removed all ground for the argument that he, by continuing in the employment, under the circumstances disclosed, assumed the risk of the dangers incurred by the use of the defective lantern. Indianapolis, etc., R. W. Co. v. Watson, supra; Hough v. Railway Co., 100 U. S. 213; Goldberg v. Schrayer, 37 Ill. App. 316.
The remaining question- for our consideration is whether the answers to the interrogatories disclose such a state of facts as will excuse appellant upon the ground of contributory negligence on the part of appellee.
*569 In Hough v. Railway Co., supra, the court says: “We may add, that it was for the jury to say whether the defect in the cow-catcher or pilot was such that none but a reckless engineer, utterly careless of his safety, would have used the engine without it being removed. If, under all the circumstances, and in view of the promises to remedy the defect, the engineer was not wanting in due care in continuing to use the engine, then the company will not be excused for the omission to supply proper machinery, upon the ground of contributory negligence. That the engineer knew of the alleged defect was not, under the circumstances, and as a matter of law, absolutely conclusive of the want of due care on his part. ’ ’
In this connection we quote the following from the opinion in the case of Indianapolis, etc., R. W. Co. v. Watson, supra: “It is a fundamental principle in this branch of jurisprudence, that one who voluntarily incurs a known and immediate danger is guilty of contributory negligence, and we are unable to perceive why a promise should relieve the party injured through his own contributory fault. If the danger is not great and constant, then such promise may well be deemed to relieve him; but where it is great and immediate, and is of such a nature that a prudent man would not voluntarily incur it, a promise does not nullify or excuse the contributory negligence. Even if there be a promise by the employer, the employe must not subject himself to great and evident danger, since this he can not do without participating in the employer’s fault. * * When the line of danger, direct and certain, is reached, there the citizen must stop, and he can not pass it, even upon the faith of another’s promise, if to pass it requires a hazard that no prudent man would incur.”
It is alleged in the complaint that the lantern was de *570 fective, and that in the ordinary mode of using it in making couplings of freight cars, giving signals and the performance of other duties, the light was liable to be suddenly extinguished, of which facts appellee informed •appellant; and, also, “that there might be danger to plaintiff in performing the duties required of him.”
It is further alleged that appellee believed ‘ ‘there was no great or immediate danger in using said old lantern.”
It appears, from the answers to the interrogatories, that appellee knew the lantern was defective and dangerous; that the light was accustomed to go out in the ordinary use of the lantern, and that in fact it had gone out on each day appellee had used it, and that the danger vtas great, apparent and continuous while the lantern was being used in the attempt to couple cars by night. It is specifically alleged, as we have seen, that appellee, while using the lantern in reliance on the promise of appellant to supply a new one within a short time, believed there was no great or immediate danger in so using said old lantern, and while there is no express finding that in fact he did know that the danger in continuing to use the lantern was great and imminent, there is the finding that he knew the lantern was defective and that the light was accustomed to go out in the ordinary use of the lantern—in giving signals and in the performance of other 'duties—and that the danger in using the lantern in coupling cars was great, apparent, and continuous. If the danger in using the defective lantern in coupling cars was apparent to appellee, it was known to him. If such danger was continuous, it was constant. If the danger continued without break or cessation, it was immediate and imminent.
It is further found by the jury that an ordinarily prudent and cautious man would not knowingly continue to use for coupling cars by night a lantern the light of *571 which, in the ordinary use of the lantern for such purpose, had continuously theretofore been accustomed to go out.
Counsel for appellee insist that it does not appear that the light was accustomed to go out continuously, or that it had ever previously gone out while appellee was using it in coupling cars. It may be conceded that under the issues the fact may have been proven that appellee had, prior to the injury, used the lantern a number of times on each night in coupling cars, and it is true there is an express finding that there was no evidence on the trial in support of the proposition that the light of the lantern had at any time prior thereto gone out while the lantern was being so used. It is also true there is no finding that the light was accustomed to go out continuously when the lantern was in use in giving signals or in the performance of any other duties by appellee. The answer to this interrogatory, for the reason stated, is not in irreconcilable conflict with the general verdict.
The jury, however, did find the facts, as we have before observed, that the light was accustomed to go out each night in the ordinary use of the lantern by appellee in giving signals and the performance of other duties, except coupling cars.
Now, under the rule enunciated in Indianapolis, etc., R. W. Co. v. Watson, supra, what is the correct solution of the question under ^consideration?
Counsel for appellee contend that the Watson case was reversed solely on the ground that there was no promise made to furnish him a safe lantern. We do not so unstand the decision in that case. One of the questions decided in that case was that there was no evidence tending to prove that Watson was induced to remain in the service of the company by any promise, express or implied, that a safe lantern would be provided.
*572 Judge Elliott, speaking for the court in that case, says:
“It is probably true that the promise of the employer, when relied on by the employe, will rebut a presumption of contributory negligence in cases where the danger is not great and immediate, but this presumption yields whenever it appears that the employe voluntarily incurs a known and immediate danger of • so grave a character that it would deter a reasonably prudent man from incurring it.
“In the case before us, the testimony convincingly shows that the appellee knew the danger he encountered, and it shows, also, that it was so great and immediate that a prudent man would not have assumed the risk it created. It results that even if it were conceded that there was a promise, and a reliance on it, there could be no recovery.”
The judgment of the court below was therefore reversed on two grounds:
1. Because there was no promise shown.
2. If the promise had been established, that Watson was shown to have been guilty of contributory negligence.
In this case the answer to the interrogatories disclosed-that appellee knew the danger he encountered when he was injured was great and continuous, but there is no express finding as a fact by the jury that a prudent man would not have encountered the risk under the circumstances.
The only question, therefore, that we are required to determine is, does it necessarily and inevitably follow, as a matter of law, that an employe who encounters a great, apparent, and continuous danger under such circumstances is guilty of contributory negligence?
The general verdict for the appellee includes a finding *573 that he used ordinary care. In other words, that a prudent man would have encountered the risk under the circumstances. Cincinnati, etc., R. W. Co. v. Grames, 136 Ind. 39.
Are the special findings so in conflict with the general verdict on the question that there is no possibility of the antagonism being removed by any evidence legitimately admissible under the issues?
Is the fact that appellee knew that the danger in the use of the lantern in coupling cars was great and continuous, under the circumstances, as a matter of law, absolutely conclusive of the want of due care on his part?
In this connection we quote from and refer to the following authorities:
“The question of contributory negligence is ordinarily a question of fact for the jury to determine.
“It is only when the fact or facts recited lead inevitably to but one conclusion (and that the conclusion of negligence), that the court can be called upon to say, in an instruction, that certain facts constituted negligence. ’ ’ Board, etc., v. Sappenfield, 6 Ind. App. 577.
“Where a master, on being notified by the servant of defects that render the service dangerous, expressly promises to repair the defect, or to do what is equivalent thereto, the servant may continue in the employment for such a period of time as it would be reasonable to allow for the performance of the promise. In such case, if injury results, the servant may recover, unless the danger is such that no prudent person would' continue to perform the service. The servant’s knowledge of the defect is not, under such circumstances, conclusive of the want of due care on his part, because the promise of the master to remove the danger justifies him in continuing in the service, and relieves him of the charge of negligence. If the master fails to make his *574 assurance good, he is chargeable with a failure to exercise ordinary care. It is, however, a question of fact for the jury to determine whether the defect is so serious that a prudent person would not continue in the performance of the required work.” Chicago Drop Forge and Foundry Co. v. Van Dam, 36 N. E. Rep. 1024. See, also, Matchett v. Cincinnati, etc., R. W. Co., 132 Ind. 334; Brazil Block Coal Co. v. Hoodlet, 129 Ind. 327.
“It has been held that knowledge of danger is not always conclusive evidence of contributory negligence, although the fact of such knowledge may have an important bearing upon that question.” Evansville, etc., R. R. Co. v. Athon, 6 Ind. App. 295; Haynes, Spencer & Co. v. Erk, 6 Ind. App. 332; Citizens’ Street, etc., R. W. Co. v. Spahr, 7 Ind. App. 23.
“The right of appellee to recover could not be affected by his having contributed to the injury-by his act, unless he was in fault in so doing.” Noblesville Gas and Improvement Co. v. Teter, 1 Ind. App. 322; Louisville, etc., R. W. Co. v. Davis, 7 Ind. App. 222.
“It is now uniformly stated by the text writers that where the master, on being notified by the servant of the defects that render the service he is engaged to perform more hazardous, expressly promises to make the needed repairs, the servant may continue in the employment a reasonable time to permit the performance of a promise in that regard without being guilty of negligence, and, if an injury results therefrom, he may recover unless when the danger is so imminent that no prudent man would undertake to perform the service. The doctrine on this subject rests on sound principie, and it will be found to be supported by English and American decisions. The reason upon which the rule is said to rest is that the promise of the master to repair defects relieves the servant of the charge of ^negligence by continuing *575 in the service after the discovery of the extra perils to which he would be exposed. This exception to the rule has frequently come before the court, and has often been held sufficient to sustain a recovery by the servant against the master for injury received under such circumstances. The reason for the exception may be stated to be that when the master has knowledge of the defects and promises to repair the same, he impliedly requests the servant to continue work, and that he (the master) will take upon himself the responsibility of any accident that may occur during that period.” Clarke v. Holmes, 7 Hurl. & Nor. 938, cited approvedly in Furnace Co. v. Abend, 107 Ill. 44.
Another well recognized principle exists, that may be considered as ingrafted on, and a modification of, the exception to the rule, and that is: If the danger from continuing in the master’s service is so imminent that no one but one utterly reckless of his personal safety would continue in the service under the circumstances, it would be negligence to continue such service, that would bar a recovery. The question as to the knowledge of the defect by the master, whether he promised to repair, and whether the servant continuing in the service did so when the danger was so imminent that none but a person utterly reckless of his personal safety would continue in the service, are all questions of fact, to be determined by the jury. Chicago and Anderson Pressed Brick Co. v. Sobkowiak, (Ill.) 36 N. E. Rep. 572.
In such cases unless the danger is so imminent that no one but one utterly reckless of his own personal safety would continue in the service under the circumstances, the employe is not in fault in complying with the request of the employer, and the employer is held by. his promise to have taken upon himself the responsibility of any accident that may occur to the employe by the use *576 of the defective appliances during such period as may be reasonably necessary to remedy the defect. In determining the question whether a reasonably careful and prudent man would, in reliance on the promise of the employer to remove the danger, continue temporarily in the performance of his duties in the face of the known, apparent and continuous danger, all the circumstances connected with the nature of the service, the defect, the danger, and the promise should be considered. The continuance of the employe in the dangerous service during the time reasonably necessary for the employer to repair the defect does not in such case raise a conclusive presumption of negligence on the part of the employe. In such cases when the danger is equally known to the employer and employe, the presumption ordinarily is that the employer would not request or direct the employe to do what no one but one utterly reckless of his own personal safety would do. If, however, it does appear in any such case, from all the facts and circumstances, that the danger is so imminent that no one but one utterly reckless of his own personal safety would continue in the service during the time necessary to perform the service, and the employe is injured while so engaged, he is held to be guilty of contributory negligence. If all the facts and circumstances are before the court, and they are such that only one conclusion can be drawn therefrom, this question may be determined as a matter of law by the court. Cincinnati, etc., R. W. Co. v. Grames, supra.
In view of the authorities cited, it appears to us that it was for the jury to say whether the danger was so great, apparent, and continuous that none but a reckless brakeman, utterly careless of his own safety, would have continued in the service in which appellee was injured. If, under all the circumstances, and under the promise *577 to supply him with a new lantern, appellee was not wanting in due care in using the lantern to couple the cars, then the company will not be excused for its negligence upon the ground of contributory negligence. If there was a finding that an ordinarily cautious and prudent man would not knowingly continue to use such a lantern in coupling cars, under the circumstances disclosed by the evidence in this case, a different question would be presented. In this case there is no- finding that this lantern had been previously used “for such purpose,”ox that it had continuously theretofore been accustomed to go out, or that an ordinarily cautious and prudent man would not, under the circumstances, continue to use in making couplings of freight cars, a lantern, the light of which was accustomed to go out in giving signals and the performance of other duties, except coupling cars.
It may be that it is probable that the light in the lantern was as likely go out while it was being used by appellee in coupling cars as it was accustomed to do in giving signals and in the performance of other duties. It is not our province, however, to indulge in inferences or probabilities. In this connection it should be borne in mind that the jury found on the question of due care, in answer to interrogatories, only, as we have before ob- ■ served, that if the light in a lantern used in coupling cars by night was, while used for such purpose, accustomed to go out continuously, an ordinarily cautious and prudent man would not knowingly continue to use such lantern fot coupling cars by night, but they did not find the lantern in question was such a lantern.
Neither did the jury find that an ordinarily cautious and prudent man would not, under the circumstances, have used the lantern in coupling cars on this occasion. *578 What the peculiar circumstances, if any, were in connection with the use of the lantern by appellee when he was injured, we do not know. We are to presume, however, that any and all evidence legitimately admissible under the issues in favor of appellee was introduced. It was possible, under the issues, for such circumstances to have been shown as would have created an imperative duty on his part to act then and there in an attempt to couple the cars in order to enable the company to move its freight and passenger trains during that night. The evidence may have disclosed some emergency which required the coupling of the cars at that time, and if, in such emergency, in the line of his duty, he proceeded with the defective lantern, using care commensurate-with the danger, to do what was required to be done for his master, he was not necessarily guilty of contributory negligence per se under the facts and circumstances shown in the interrogatories and answers thereto.
It is true the nature of the cause of .action and the answers to the interrogatories are such as would lead, in the absence of the general verdict, to the inference that-an ordinarily prudent man would not have continued to use the lantern in question, but this inference the court can not make against the general verdict, since we can make no intendments in support of the answers to the interrogatories.
Before contributory negligence can be adjudged against appellee in this case, by the court, it must appear:
1. That the danger incurred by him was known and immediate.
2. That a prudent man would not, under the circumstances, have assumed the risk incident to the use of the defective lantern on this occasion.
The answers to the interrogatories do not, in our opin *579 ion, sustain the second proposition against the general verdict.
Filed Nov. 15, 1894;
petition for rehearing overruled Feb. 6, 1895.
Judgment affirmed.