Dissenting Opinion.
Ross, J.
The pivotal question in this case is whether or not the appellee, knowing the defective condition of the lantern, had a right to continue to use it, although appellant had promised to furnish him a new one when the new supply, which had been ordered, arrived; and, continuing to use it, and having been injured by reason thereof, can make the appellant answer in damages therefor.
It- is a well settled rule that when a servant continues in the service of the master, knowing of' the defective condition of the machinery with which he is to wprk, he thereby assumes the risk as increased by the defect. Parke County Coal Co. v. Barth, 5 Ind. App. 159; Becker v. Baumgartner, 5 Ind. App. 576; Kentucky and Indiana Bridge Co. v. Eastman, 7 Ind. App. 514; Umback v. Lake Shore, etc., R. W. Co., 83 Ind. 191; Indiana, etc., R. W. Co. v. Dailey, 110 Ind. 75; Brazil Block Coal Co. v. Young, 117 Ind. 520; Pennsylvania Co. v. O’Shaughnessy, Admr., 122 Ind. 588; Louisville, etc. R. W. Co. v. Corps, 124 Ind. 427; Brazil Block Coal Co. v. Hoodlet, 129 Ind. 327; Evansville, etc., R. R. Co. v. Duel, 134 Ind. 156; Buzzell v. Laconia Mfg. Co., 48 Maine, 113; Hatt v. Nay, 144 Mass. 186, and cases cited; Beach Cont. Neg. (2d ed.), section 371, and cases cited.
To this general rule there is an exception which arises when the master induces the servant to remain in his service upon a promise to remedy the defect.
“The only ground upon which the exception before *581 us can be justified is, that in the ordinary course of events the employe, supposing the employer has righted matters, goes on with his work without noticing the corn tinuance of the defect. But this reasoning does not apply, as we have seen, to cases where the employe sees that the defect has not been remedied, and yet intelligently and deliberately continues to expose himself to it.” Wharton Neg. (2d ed.), 221. The servant has a right to assume that the master will keep his promise and make the repairs, but when he learns that the promise has not been observed and the repairs not made, he can no longer act upon the assumption. Knowledge on his part that the defect has not been remedied puts an end to the right to assume that the master has done his duty. Webber v. Piper, 38 Hun (N. Y.) 353; Indianapolis, etc., R. W. Co. v. Watson, 114 Ind. 20.
The exception to the general rule, therefore, can only be upheld on the theory that the servant has reason to expect that in consequence of his notification and the master’s promise to repair the defect, the repairs will be made before he will be subjected to danger from it; and this upon the hypothesis that, as it is. the duty of the master to furnish reasonably safe machinery and keep it in reasonably good condition and repair, he will do so when notified that it has become defective and unsafe for use.
I am free to admit that some of the cases apparently hold that a promise to repair on the part of the master is in effect a guaranty to indemnify the servant against injury while he remains exposed to the known peril. The great weight of authority, however, and all that can reasonably be deduced from the cases where the question has been fully considered is that if the danger from the use of the defective machinery is not great or imminent the servant may continue in the service a reasonable *582 length of time after the promise to repair, and that if he is injured during that time he may maintain an action therefor. But even those cases hold that if the defect is such that obviously with the use of the utmost skill and care danger is imminent, the servant assumes the risk if he encounters it, notwithstanding the promise of the master to repair. Indianapolis, etc., R. W. Co. v. Watson, supra, and cases cited; Conroy v. Vulcan Iron Works, 62 Mo. 35; Woods Master and Servant (2d ed.), section 379.
The reason for the exception is not because the naked promise of the master makes the danger any the less or relieves the servant in any degree from the exercise of all reasonable diligence and care to avoid being injured, but because he is induced by the master to believe that the defect will be removed, and he will not be longer exposed to it. He is thus lulled into a feeling of security. But if the promise is not kept, and he knows it, and still continues to use the machinery in its defective condition, the inducement is gone, and he can not close his eyes to the dangers which confront him. To hold otherwise would be to cast upon the master the -obligation of exercising a greater degree of care for the safety of the servant, than the servant is bound to exercise for himself. The promise creates no greater obligation, but simply implies that the master will do the duty which the law imposes upon him to furnish his servants with machinery reasonably free from defects.
Among the interrogatories submitted to, and answered by, the jury in this case are the following:
"14th. Was the plaintiff injured on the 8th day of December, 1888, at between 6 and 7 o’clock in the evening, by having his left arm caught between the deadwood of a moving and a stationary car while he was making a coupling of the two cars, and while he was *583 standing between the two cars for the purpose of making that coupling? Answer. Yes.
“15th. If you answer question thirteen in the affirmative, that plaintiff, at the time of his said injury, had in his hand a lantern, then state here whether or not the light in the lantern he then had in his hand, had ever before that time, in the customary and ordinary use of it, gone out while it was in the plaintiff’s hands and to his knowledge? Answer. Yes.
“16th. If you answer the last question in the affirmative, state how many times the light in said lantern had so gone out while in the plaintiff’s hands, and while he was using it in the ordinary and customary way, and if the same occurred on more than one day, state what the dates were? Answer, Yes, each day.
“20th. Was it dangerous for a person to attempt to couple cars by night with a lantern, the light in which was accustomed to go out in the ordinary use of the lantern? Answer. Yes.
“21st. If you answer question twenty in the affirmative, state whether or not the danger was great, apparent and continuous while the lantern was so being used. If you say it was not, state why the danger to the person so using a lantern of that kind was not great, apparent and continuous while he was so using it? Answer. Yes.
“22d. Would an ordinarily cautious and prudent man knowingly continue to use for coupling cars by night, a lantern the light in which, in the ordinary and customary use of the lantern for such purpose, had continuously theretofore been accustomed to go out? Answer. No, not if it continuously went out.”
Prom these interrogatories and the answers thereto, the jury find that the appellee was knowingly using a lantern furnished him by appellant, which, in the customary and ordinary use for which it was furnished and *584 used, was liable to, and did, go out so that it was dangerous to use it; that the danger of using it was great, apparent, and continuous, and that an ordinarily cautious and prudent man would not knowingly continue to use it.
These facts can lead to but one conclusion, namely, that it was appellee’s own act that caused the injury.
As Elliott, J., in the case of Indianapolis, etc., R. W. Co. v. Watson, supra, says: "It is a fundamental principle in this branch of jurisprudence, that one who voluntarily incurs a known and immediate danger is guilty of contributory negligence, and we are unable to perceive why a promise should relieve the party injured through his own contributory fault. If the danger is not great and constant', then such a promise may well be deemed to relieve him; but where it is great and immediate, and is of such a nature that a prudent man would not voluntarily incur it, a promise does not nullify or excuse contributory negligence. Even if there be a promise by the employer, the employe must not subject himself to a great and evident danger, since this he can not do without participating in the employer’s fault. The community have an interest in such questions, and that interest requires thaj; all persons should use ordinary care to protect themselves from known and certain danger. A man who ¡brings about his own death or serious bodily injury sins against the public weal. All must use ordinary care to avoid known and immediate danger, although it is not the assumption of every risk that violates this rule. When the line of danger, direct and certain, is reached, there the citizen must stop, and he can not pass it, even upon the faith of another’s-promise, if to pass it requires a hazard that no prudent-man would incur.”
The jury here find that the danger from using the lantern was great, apparent, and continuous, and that no- *585 ordinarily cautious and prudent man would use it. To risk danger which is great, apparent, and continuous is equivalent to courting injury, and one who does so must alone suffer.
The lantern furnished appellee by appellant can not well be called machinery in the sense in which that word is usually used. It is rather an implement, not necessarily used to work with, but to furnish light by which to work.
Hence, as is said by a recent writer, Bailey’s Masters’ Liability to Servants, 209: “In cases where persons are employed in the performance of ordinary labor, in which no machinery is used and no materials furnished, the use of which requires the exercise of great skill and care, it can scarcely be claimed that a defective instrument or tool furnished by the master, of which the employe has full knowledge and comprehension, can be regarded as making out a case of liability. A common laborer who uses agricultural implements while at work upon a farm or in a garden or one who is employed in any service not requiring great skill or judgment, and who uses the ordinary tools employed in such work, to which he is accustomed, and in regard to which he has perfect knowledge, can hardly be said to have a claim against his employer for negligence if, in using a utensil which he knows to be defective, he is accidentally injured. It does not rest with the servant to say that the master has superior knowledge, and has therefore imposed upon him. He fully comprehends that the instrument which he employs is not perfect, and, if he is injured, it is by reason of his own fault and negligence. The fact .that he notifies the master of the defect, and asks for another implement, and the master promises to furnish the same, does not render the master responsible, if an accident occurs. A rule imposing such a li *586 ability in such a case would be far reaching, and would extend the principle ‘that it is the duty o.f the master to the servant, and the implied contract between them, that the master shall furnish proper, perfect, and adequate machinery or other materials and appliances necessary for the proposed work, ’ to many of the vocations of life for which it was never intended.”
The same language may be found in the case of Meador v. Lake Shore, etc., R. W. Co., 138 Ind. 290. In that case the railway company furnished its servant a ladder to be used by him in the performance of his duty of lighting and extinguishing lamps at places where streets in the town of Elkhart crossed the railroad. The ladder got out of repair and the servant complaining of its condition, the company promised to furnish a new one soon. He continued to use the defective one and was injured, and the court held that he could not recover for the reason that he assumed the risk, notwithstanding the promise of the master to furnish a new one.
In the case of Crichton v. Keir, 1 Macph. (1 Scotch. Court of Sessions) 407, it was held that ‘‘In an action of damages at the instance of a railway laborer against his masters (the contractors) for bodily injury alleged to have been sustained through their furnishing him with ahorse unfit, from age and otherwise, for the work which it had to do, the pursuer (plaintiff) alleged, inter alia, that his masters were aware of the unfitness of the horse, had promised to furnish another, and had induced the pursuer to go on with the old horse in the meantime by promises of assistance, which they had failed to fulfill— held that the pursuer’s averments showed that he knew the unfitness of the horse and the danger of continuing to work with it: and, therefore, that he had no claim against his masters on account of the injury alleged.”
See, also, Marsh v. Chickering, 101 N. Y. 396; Cor *587 coran v. Milwaukee Gaslight Co., 81 Wis. 191; Jenney Electric Light and Power Co. v. Murphy, 115 Ind. 566; Gowen v. Harley, 56 Fed. Rep. 973, and cases cited.
In the case under consideration, the promise which the appellee alleges in his complaint he relied upon was not to repair the lantern then being used by him, but a promise to furnish him a new one when a new supply arrived. He was not induced to continue the use of the old lantern under a promise that it would be repaired, relying upon which he continued its use upon the assumption that the appellant had kept the promise, and made the repairs; but, on the contrary, he knew that it was not to be repaired, and that if he continued in the appellant’s employ he must use it in its defective condition until the arrival of the new lanterns.
In the case of Marquette, etc., R. R. Co. v. Spear, 44 Mich. 169, Cooley, J., speaking for the court, says:
“But it is argued that the company promised to repair the engine, and plaintiffs had a right to rely upon this being done. The promise was to repair it sometime; and meantime the instrument was being employed by plaintiffs from day to day with knowledge that the repairs were not made. When there is a promise- to repair immediately, or within a fixed time, and a party relies upon its having been done, and is injured because of such reliance, he has a right to complain; but this is no such case. The promise was wholly indefinite, and plaintiffs never relied upon it except as a probable future event. They knew the repairs had not been made when they employed the engine on the day of the fire, and they deliberately and most carelessly took the risks of what actually happened.”
In the case of Webber v. Piper, supra, the court says:
“There was no defect in the saw beyond the fact that it was out of set. This is of constant occurrence when the *588 saws are being used. The plaintiff asked that the saw be set and he was told, in substance, that it would be done at noon or be seen to at noon. The plaintiff, with full knowledge that the saw was out of set, used it, and he testified that by reason of the saw being out of set he was injured. The risk was one incident to the business.”
In view of the fact that the jury find that the appellee knew of the defective condition of the lantern; that the danger from using it in that condition was great, apparent, and continuous, and that an ordinarily cautious and prudent man would not have used it.
I think the court below, in general term, erred in reversing the judgment in favor of appellant on the answers to the interrogatories, notwithstanding the general verdict.
Filed Nov. 15, 1894.