The Indianapolis and St. Louis Railway Company v. Watson.

114 20
115 118
115 569
117 266
117 525
118 582
121 196
122 593

114 20
124 380
124 428
124 508
127 52

114 20
129 332

114 20
130 325

114 20
132 342
133 242

114 20
135 366

114 20
140 525
140 626

114 20
146 263
147 384

114 20
148 464
148 465

114 20
160 264

114 20
162 93

No. 12,232.

## The Indianapolis and St. Louis Railway Company v. Watson.

MASTER AND SERVANT.—*Negligence.*—*Dangerous Employment.*—*Assumption of Risk.*—*Promise of Employer to Remedy Defect.*—An employee, who continues in the service of his employer after notice of a defect augmenting the danger, assumes the risk as increased by the defect, notwithstanding he may object or complain, unless the master expressly or impliedly promises to remedy the defect.

SAME.—*Night Work.*—*Furnishing Light to Employee.*—*Liability of Employer.*—Where a light, as the employee knows, is essential to the safe performance of his work as a watchman in a railroad freight yard, in the absence of a promise to furnish the light, on which promise the employee relies, the employer is not liable for an injury resulting from an attempted performance of the service without it, although it is the master's duty to provide the light, and although the servant had previously complained of the danger, and demanded that the light be provided.

SAME.—*Great and Immediate Danger.*—Where an employee knows that the danger is great and immediate, such as a reasonably prudent man would not assume, he can not recover for an injury, even though he remained in the employer's service in reliance upon the latter's promise to remedy the defects which produced the danger.

INSTRUCTIONS TO JURY.—*How Considered on Appeal.*—An instruction will be considered in connection with the other instructions of the series upon the same subject; and if, when so considered, the law is expressed, no available complaint can be made, although one instruction, standing alone, may be incomplete or may contain an inaccurate statement.

NEGLIGENCE.—*Supreme Court.*—*Consideration of Evidence.*—Where there is no conflict of testimony, the Supreme Court must decide the legal effect of the testimony in the record, and in doing so does not depart from the rule that it will not weigh the evidence.

From the Marion Superior Court.

*J. T. Dye*, for appellant.

*S. M. Shepard, J. B. Elam* and *C. Martindale*, for appellee.

ELLIOTT, J.—Stated in a condensed form, the material allegations of the complaint are these: The appellant maintained a freight yard near the city of Indianapolis, in which there were many tracks and switches used for handling loco-

motives and cars. On the 15th day of October, 1882, the appellee was in the service of the appellant as a night watchman. His duties as such watchman were to go about and over the yard at all hours of the night, and look after the property of his employer, and to wake up at the proper times its employees. The appellant knew that it was necessary that the watchman should be provided with a light in order that he might properly discharge his duties and at the same time protect himself from danger, yet the appellant refused to provide a light. A day or two after the appellee had been so employed he notified his employer that it was necessary for him to have a light in order to discharge his duties and to protect himself. His employer promised to procure a light for him in a short time, and requested him to continue in the performance of his duties. Relying on this promise, he did continue in the appellant's service, but the light was not provided as promised. On the night of November 1st, 1882, he was injured, without any fault on his part, while in the discharge of his duties, and his injury was caused by the wrong and negligence of the appellant in failing to provide him with a lantern.

The fourth instruction given by the court reads thus : " The general rule is, that when a servant, before he enters the service, knows it to be hazardous, or voluntarily continues his service, without objection or complaint, when he has such knowledge, he is presumed to contract with reference to the state of things as they are known to him, and if he knows that the continuance of such service exposes him to constant and certain danger, the servant in such cases takes the risks upon himself, and in case he suffers injury thereby, he waives all claims for damages against his master for such injury. As has been said in argument, the master is not required to take better care of his servant than he takes of himself."

Appellant's counsel dissects this instruction, and, seizing on the words " without objection or complaint," assails it as erroneous.

This course can not be successfully pursued. The instruction must be taken in connection with the others of the series, and can not be considered as standing alone. An instruction is not to be judged by taking mere fragments dislocated from their proper connections, nor is one instruction to be taken as complete in itself. This instruction must, as is well settled, be taken as an entirety, and in connection with the others referring to the same subject and immediately connected with it. *City of Indianapolis* v. *Gaston,* 58 Ind. 224; *Deig* v. *Morehead,* 110 Ind. 451.

We must, therefore, take the fourth instruction in connection with that bearing upon the same subject, which is as follows :

" 6. To the general rule I have announced in relation to a servant who, with a knowledge of the dangers of the service, continues in it, there is at least this exception, that if a servant knows that his service is dangerous, and that he has not been provided with proper means or implements for the reasonably safe performance of the duties of his employment, and makes complaint to his master, who promises that suitable and proper implements shall be provided him to render his service less dangerous, then such servant may continue in the service a reasonable time, and may recover for an injury sustained by him within such time, if, on account of the master's negligence in failing to supply the means of avoiding danger, the injury results ; provided such servant at the time of the injury was not guilty of any negligence which contributed to produce the injury. His care must be also proportioned to the danger ; when the one is increased, the other must be also. Yet all that is required is ordinary care under the circumstances of the case. And you must determine from the evidence in the case what would be a reasonable time within which he might continue in the master's service under said promise, if any was made, and, also, what would be ordinary care—that is, such care as an ordinarily prudent and cautious person would exercise under the cir-

cumstances of the case. The want of such care is what the law terms negligence."

If these instructions, taken together, express the law, then the appellant has no just cause of complaint, even though the isolated clause which counsel detaches and assails should in itself be regarded as an inaccurate statement of the law. Our conclusion is, that when the instructions are so taken they express the law as favorably to the appellant as it had a right to ask.

The first of these instructions does not assert that those employees who continue in the master's service, " without objection or complaint," do not assume the usual risks of the service. It simply asserts that all who do continue " without objection or complaint" do assume the risks incident to the service ; but it by no means asserts that those who do complain and object do not also assume those risks. Possibly, the instruction standing alone may be incomplete, but it can not be justly said to be erroneous, since it may be true that all who continue in a service without objection do assume the risks as well as those who do make objections. But, however this may be, it is sufficiently evident that the fourth instruction is made complete by the sixth, and there is, therefore, no available error.

The next step takes us into a field of stubborn conflict. There are authorities holding that, where the employee objects to the safety of the appliances furnished him, the employer is liable if the employee is injured while in the employer's service, and within a reasonable time after urging the objection. *Union Manfg. Co.* v. *Morrissey,* 22 Am. L. Reg. 574 ; *Thorpe* v. *Mo. Pacific R. W. Co.,* 89 Mo. 650 (58 Am. R. 120) ; 2 Thompson Negligence, 1009.

A careful examination of the other authorities relied on by appellee's counsel has satisfied us that they do not decide all that it is asserted that they do.

In *Holmes* v. *Clarke,* 6 Hurl. & N. 349, the master neglected to fence a dangerous place, as an act of Parliament re-

quired him to do, and a servant was awarded a recovery for injuries caused by this negligence. Leaving out of consideration the element introduced by the positive legislation, although it is by no means clear that the act of Parliament did not exert an important influence, we yet conclude that the case does not sustain appellee's position. *Wabash, etc., R. W. Co.* v. *Locke*, 112 Ind. 404.

This conclusion we rest upon these words of the opinion in the case cited by counsel : " Where machinery is required by an act of Parliament to be protected, so as to guard against danger to persons working it, if a servant enters into the employment when the machinery is in a state of safety, and continues in the service after it has become dangerous in consequence of the protection being decayed or withdrawn, but complains of the want of protection, and the master promises to restore it, but fails to do so, we think he is guilty of negligence, and that if any accident occurs to the servant he is responsible." The promise of the master formed, it is obvious, an important factor in the case, and exerted a controlling influence on the judgment of the court.

There are some expressions in *Greene* v. *Minneapolis, etc., R. W. Co.*, 31 Minn. 248, that seem to support the appellee's contention, but the ultimate decision is against him. It was there said : " If the emergencies of a master's business require him temporarily to use defective machinery, we fail to see what right he has in law or natural justice to insist that it shall be done at the risk of the servant and not his own, when, notwithstanding the servant's objection to the condition of the machinery, he has requested or induced him to continue its use under a promise thereafter to repair it." At another place, the court, in speaking of the general rule, asserts that the master is liable where the servant gives notice of the defects and the master " thereupon promises that they shall be remedied."

The utmost that can be deduced from the case under immediate mention is, that the servant may continue in the

The Indianapolis and St. Louis Railway Company *v.* Watson.

service a reasonable time after the promise to make the machinery or appliances safe, and that if he is injured within that time he may maintain an action.

The cases of *Kroy* v. *Chicago, etc., R. R. Co.,* 32 Iowa, 357, *Greenleaf* v. *Dubuque, etc., R. R. Co.,* 33 Iowa, 52, *Muldowney* v. *Illinois Central R. R. Co.,* 39 Iowa, 615, *Lumley* v. *Caswell,* 47 Iowa, 159, and *Way* v. *Illinois Central R. R. Co.,* 40 Iowa, 341, do not, as we understand them, go further than to hold that the master is not liable where the servant continues in his service with notice of its danger, unless he has induced the servant to do so by an express or implied promise. In *Way* v. *Illinois Central R. R. Co., supra,* it was held error to refuse an instruction containing this clause : " If a brakeman on a railroad knows that the materials with which he works are defective, and continues his work without objecting, and without being induced by his master to believe that a change will be made, he is deemed to have assumed the risks of such defects." This, we think, implies that there must be a promise either in express words or arising by fair implication from the conduct of the master. Going back to the case of *Kroy* v. *Chicago, etc., R. R. Co., supra,* we find the principle upon which the subsequent decisions rest, for they are all built upon that case. It was there said : " Another important modification of the liability of a master for an injury to an employee, which is sustained by an almost unbroken current of authority in this country and in England, is, that if a servant knows that a fellow-servant is habitually negligent, or that the materials with which he works are defective, and continues his work without objecting, and without being induced by his master to believe that a change will be made, he is deemed to have assumed the risk of such defects." This ruling certainly does not sustain the appellee's contention that if an objection and protest are made the master becomes liable. The case of *Snow* v. *Housatonic R. R. Co.,* 8 Allen, 441, can not be regarded as in point upon this question, nor can the case of

*Indiana Car Co.* v. *Parker*, 100 Ind. 181, for both of these cases simply affirm the general rule that it is the duty of the master to provide his servants with a safe working place and with safe machinery and appliances.

In *Patterson* v. *Pittsburgh, etc., R. R. Co.*, 76 Pa. St. 389, there was an express promise on the part of the master, and that fact gives a controlling force to the decision there made. We are referred to Dr. Wharton's statement that "In this country the exception has been still further extended, and we have gone so far as to hold that a servant does not, by remaining in his master's employ, with knowledge of defects in machinery he is obliged to use, assume the risks attendant on the use of such machinery, if he has notified the employer of such defects, or protested against them, in such a way as to induce a confidence that they will be remedied." Wharton Neg. (1st ed.), section 221.

If it were conceded that this is a correct statement of the law, still, it would not supply a premise for the conclusion that an objection or protest exempts the servant from the general rule that he assumes the risk, for it is implied that something must be done by the master to induce the belief that the defect will be remedied, and it is difficult to conceive what other thing than a promise, express or implied, can be regarded as sufficient to induce such a belief. We find on examining the later edition of Dr. Wharton's book that he adds to what is copied from the earlier edition by counsel these words: "Such confidence being based on the master's engagements, either express or implied," and modifies the statement in other respects. Wharton Negligence (2d ed.), section 220.

This author is, indeed, inclined to condemn the exception to the general rule, even as he states it, for he says: "The only ground on which the exception before us can be justified is, that in the ordinary course of events the employee, supposing the employer has righted matters, goes on with his work without noticing the continuance of the defect. But

this reasoning does not apply, as we have seen, to cases where the employee sees that the defect has not been remedied, and yet intelligently and deliberately continues to expose himself to it." Wharton Negligence (2d ed.), section 220.

The rule which we regard as sound in principle and supported by authority may be thus expressed : The employee who continues in the service of his employer after notice of a defect augmenting the danger of the service, assumes the risk as increased by the defect, unless the master expressly or impliedly promises to remedy the defect. The promise of the master is the basis of the exception. If the promise be absent the exception can not exist. In support of our conclusion we refer to these authorities: *Russell* v. *Tillotson*, 140 Mass. 201 ; *Linch* v. *Sagamore Manfg. Co.*, 143 Mass. 206 ; *Hatt* v. *Nay*, 144 Mass. 186 ; *Buzzell* v. *Laconia Manfg. Co.*, 48 Maine, 113 (77 Am. Dec. 212, 218, and authorities, n.) ; *Galveston, etc., R. R. Co.* v. *Drew*, 59 Tex. 10 (46 Am. R. 261) ; *Webber* v. *Piper*, 38 Hun, 353 (33 Alb. L. J. 64) ; *Pennsylvania Co.* v. *Lynch*, 90 Ill. 333 ; Wood Master and Servant, 21 ; Beach Cont. Neg. 372.

The rule absolving the servant from the assumption of risks is an exception to the general rule, for the general rule is that the servant does assume all the ordinary risks of the service he enters. There must, therefore, be some ground for the exception, and the only solid ground that can be found is the inducement held out by the agreement of the master. If this be not so, then an employee at his first entrance into service might object and protest, and successfully claim that he was exempt from the perils of the service. Or, if our theory be not sound, a mere complaint or objection might, in effect, overturn the general rule, and this would result in confusion and uncertainty. We can see no way to hold that the servant is exempt from the known risks of his service where there is no express or implied contract on the part of the master, without completely nullifying the general rule. The servant is at liberty to quit the service, and if he re-

mains after knowledge of its danger he assumes the risks, even though he may object or complain, unless he is induced to continue by a promise of the master to remove the cause that augments the danger, since, if this be not true, it must be true that any objection or complaint made at any time will absolve him from the risk, and this conclusion can not be sustained. As the exception concedes and tries the general rule, it can not be allowed to destroy it, for if it were allowed to do this, it would cease to be an exception. *Sweeney* v. *Berlin, etc., Co.,* 101 N. Y. 520.

The evidence in this case, as counsel concede, shows that a lantern was essential to the service the appellee undertook to perform; that, as the appellee knew, without the lantern the act which he was engaged in performing subjected him to great danger, and he was injured while attempting to perform it. Nor does the counsel for the appellant, as we understand his argument, contend that it was not the duty of the company to provide the lantern, nor does he question the authority of the person to whom the appellee made application for one to act for the company in such cases. The central position assumed is, that the evidence does not show any promise. This is the question presented to us, and the question to which we at this point limit our decision. We are, therefore, required to determine whether there is evidence fairly supporting the verdict on this subject, and in doing so we must take that which the jury deemed credible and trustworthy. *Julian* v. *Western Union Tel. Co.,* 98 Ind. 327.

We can not sustain the verdict unless we find in the record evidence tending to prove that a promise to remedy the cause of the augmented danger of the service was made by the appellant, and that this promise induced the appellee to remain in the service after he acquired knowledge of the increased peril caused by his employer's failure to furnish him with a lantern. Two things must concur : the promise, express or implied, and the inducement created by it. If either be ab-

sent the case fails. If no reliance was placed on the promise there could not have been an inducement influencing the appellee to continue in the service with knowledge of its increased danger, and if no promise was made the case is still stronger against the appellee, for in that event there could be no possible ground for the position that the employer induced him to continue in the service.

The appellee's argument on the point under discussion is, that the evidence shows "three conversations between the servant and his master's agent; the first two being friendly, and resulting in each case in a distinct promise to furnish the lantern. The third was due to the neglect of the master and the persistence of the servant, and was characterized by some angry words, but there was no withdrawal of the promises before made—nothing but an angry, petulant remark indicating at most that the fulfilment of the promise might be delayed. That the servant continued in the service with the expectation that the master would do his duty, and looked every night for the fulfilment of the promise. That he was sent by the agent of the master to do the particular service in which he was injured, and that he was doing his best to see the location of moving cars, and could have done so with a light, but, having none, was misled as to the track the moving cars were on, from having just seen a train being made up on track number three, and was thus injured by a sudden jar from a car on track number two, which he did not expect, and had no reason to anticipate, and against which he had taken no precaution."

In substance, the argument of the appellant is this: "Instead of a promise to furnish a lantern there was a quarrel, in which defendant's agent accused plaintiff of carrying off the lantern, and told him he would be lucky if he got another in a month. There was no promise at all. This was the last conversation upon the subject. There was no request that plaintiff should remain in defendant's service till a lantern should be furnished. The plaintiff emphatically

swears that defendant's agent did not lead him to believe he would get a lantern short of a month, and that he went to work without any expectation that Howells, the defendant's agent, would get him a lantern in less than a month, and in this same conversation he threatened to lamm the agent because 'it looked like he did not care for plaintiff's safety.' Now, if there had been a promise to furnish a lantern at the end of thirty days, that would not relieve plaintiff from the risk incurred by working without a lantern for that thirty days, when, as he says, he had no expectation that a lantern would be furnished."

It is true, as appellee's counsel affirm, that there were three conversations, and that in two of them a promise was made ; but it is also true that the appellee, finding that the promise was not kept, entered complaint, and was told in the last conversation that he would be lucky if he got a lantern in a month. It is likewise true that the appellee did not, after the last conversation, rely on the promise previously made, for he testified that he did not expect to be supplied with a lantern. This is his own testimony : "After I had asked him for the lantern twice, and then left orders twice, I went over early to see him myself, and told him it was dangerous—it was a dangerous place to be without a lantern—and it seemed like it made him out of humor, and he said : ' You may think yourself well off if you got a lantern in a month,' and then I did not say anything more to him about it. That was two weeks before I was hurt that I asked Mr. Howells for the last time for a lantern. Well, when he would not get me a lantern, and when he spoke the way he did, I got a little excited, and when I get excited I will say what I please. He said the men need not be carrying their lanterns off, they were all charged up to them. I told him I had not lost my lantern, and had not carried it off, but put it into the box, and that if he would have a box for the night men and a box for the day men they might save their lamps. It was in this same conversation that he told me I would be lucky if I got an-

other lantern in a month.   It was after that I had a rough talk with him, because he had insulted me there, because it looked like he did not care for my safety." In answer to this question : " He did not lead you to expect that he was going to get a lantern for you short of a month in that conversation, did he?" the appellee said : " No, sir." He was also asked this question : "And you went on to work in the yard without a lantern, and without any expectation that Howells would get a lantern for you within a month, did you not ? " and his answer was, " Yes, sir."

The appellee also testified that Howells was the only man he ever asked for a lantern, and thus narrates one of the first conversations : " I told him I had been pretty nearly killed down in the yard once without a lamp, and I did not want to be killed by neglect of having the lamp there ; then I got a little out of fix because he didn't furnish me a lamp, and I told him I had pretty nearly got killed in that yard by being struck by a car, and all that ; that is what I said, and then he promised to get me a lamp."

After the most careful study we find ourselves unable to resist the conclusion that the verdict can not be sustained. We are constrained to hold that the appellee was not induced to remain in the appellant's service by any promise, express or implied. On the contrary, the clear and irresistible inference from the evidence is that the promise was withdrawn, and that the appellee continued in the service, knowing its great danger, without any promise that the lantern, or lamp, required to make it safe, would be provided. He himself says that " he went on with the work without any expectation that Howells would get a lantern " for him within a month. This shows the construction put by the appellee upon the words of Howells, and it is the only natural and reasonable construction that those words will bear. With this, the appellee's own testimony, before us, we can see no other course consistent with duty open to us save that which leads to a reversal of the judgment. We must affirm that an

employee, who continues in the employer's service after he has acquired knowledge of its great and immediate dangers, assumes the risk, unless he is induced to continue in the service by a promise, express or implied.

We do not depart from the rule that an employer is bound to use ordinary care to provide a safe working place and safe appliances for his employees; but we do hold that the rule can not apply to such a case as this. The rule itself we regard as firmly settled. *Indiana Car Co.* v. *Parker, supra; Krueger* v. *Louisville, etc., R. W. Co.,* 111 Ind. 51; *Pennsylvania Co.* v. *Whitcomb,* 111 Ind. 212.

It is the application of the rule as made by the appellee, and not the principle it asserts, that we deny. The rule asserts that the machinery and appliances must be kept safe as against those who do not know of their unsafe condition, but does not apply to those who know of their unsafe condition, and still continue in the service without being induced to do so by the employer's promise.

The employee has a right, until he acquires knowledge of danger, or by reasonable care might acquire such knowledge, to act upon the assumption that his employer will use ordinary care to provide safe appliances; but when he becomes fully informed of the danger, he can no longer act upon this assumption. Knowledge on his part puts an end to his right to assume that the master has done his duty. It is manifest that one who knows that a duty has not been performed can not reasonably assert that he acted upon the assumption that it had been performed. The case, therefore, falls within the rule that the employee assumes the risks of all the dangers of which he has knowledge. *Pennsylvania Co.* v. *Whitcomb, supra; Indiana, etc., R. W. Co.* v. *Dailey,* 110 Ind. 75; *Lake Shore, etc., R. W. Co.* v. *Stupak,* 108 Ind. 1; *Umback* v. *Lake Shore, etc., R. W. Co.,* 83 Ind. 191.

Where there is a promise to repair which induces the employee to continue in the service, then, doubtless, he may, for

a reasonable length of time, rely on the promise and continue in the service, unless the danger of continuance, without a removal of the cause of it, is so great that a reasonably prudent man would not assume it. *Hough* v. *Railway Co.,* 100 U. S. 213; *Loonam* v. *Brockway,* 3 Rob. (N. Y.) 74; *Illinois Cent. R. R. Co.* v. *Jewell,* 46 Ill. 99; *Crichton* v. *Keir,* 1 C. Sess. Cas., (3d Series), 407.

Some of the cases go further and assert that the promise of the employer exonerates the employee entirely, even though the continuance in the service is known to him to be constantly and immediately dangerous. *Ft. Wayne, etc., R. R. Co.* v. *Gildersleeve,* 33 Mich. 133. We are not inclined to adopt this view. Our opinion is, that if the service can not be continued without constant and immediate danger, and the danger and its character are fully known to the employee, he assumes the risk if he continues in the service. It is a fundamental principle in this branch of jurisprudence, that one who voluntarily incurs a known and immediate danger is guilty of contributory negligence, and we are unable to perceive why a promise should relieve the party injured through his own contributory fault. If the danger is not great and constant, then such a promise may well be deemed to relieve him; but where it is great and immediate, and is of such a nature that a prudent man would not voluntarily incur it, a promise does not nullify or excuse the contributory negligence. Even if there be a promise by the employer, the employee must not subject himself to a great and evident danger, since this he can not do without participating in the employer's fault. The community have an interest in such questions, and that interest requires that all persons should use ordinary care to protect themselves from known and certain danger. A man who brings about his own death or serious bodily injury sins against the public weal. All must use ordinary care to avoid known and immediate danger, although it is not the assump-

tion of every risk that violates this rule. When the line of danger, direct and certain, is reached, there the citizen must stop, and he can not pass it, even upon the faith of another's promise, if to pass it requires a hazard that no prudent man would incur. Proceeding upon a somewhat different line of reasoning, other courts have reached the same conclusion as that to which we are led. *Ford* v. *Fitchburg R. R. Co.*, 110 Mass. 240; *Crichton* v. *Keir, supra; Couch* v. *Steel*, 3 E. & B. 402. The general principle which rules here is strongly illustrated by the cases which hold that a passenger can not recover for an injury received while acting in obedience to the directions of the conductor in whose charge he is, where obedience leads to a known danger which a prudent man would not voluntarily incur. *Lake Shore, etc., R. W. Co.* v. *Pinchin*, 112 Ind. 592; *Cincinnati, etc., R. R. Co.* v. *Carper*, 112 Ind. 26. If the rule prevails in such cases, much stronger is the reason why it should prevail in a case like this, where ordinary care is required of employer and employee alike, while, in the class of cases referred to, the highest degree of practicable care is required of the carrier and only ordinary care exacted of the passenger.

It is probably true that the promise of the employer, when relied on by the employee, will rebut a presumption of contributory negligence in cases where the danger is not great and immediate, but this presumption yields whenever it appears that the employee voluntarily incurs a known and immediate danger of so grave a character that it would deter a reasonably prudent man from incurring it.

In the case before us the testimony convincingly shows that the appellee knew the danger he encountered, and it shows, also, that it was so great and immediate that a prudent man would not have assumed the risk it created. It results that even if it were conceded that there was a promise, and a reliance on it, there could be no recovery.

Reluctant as we are to set aside a verdict which has passed

The Indianapolis and St. Louis Railway Company v. Watson.

the scrutiny of a learned trial court, we can not do otherwise in this instance.

Judgment reversed.

Filed Dec. 27, 1887.

## On Petition for a Rehearing.

Elliott, J.—In a very forcible and able brief, counsel for the appellee contend that we departed from the established rule and weighed the evidence. In this counsel are in error.

We took the evidence as we found it in the record, and decided, on the uncontradicted evidence, that there could be no recovery. The decision of the case, in the main, depends upon the question whether there was a promise, relied upon by the appellee, exonerating him from the consequences of his negligence in remaining in the appellant's service after he acquired full knowledge of its dangers. We have held in many cases that where the evidence fails to make out a case the judgment will be reversed. *City of Warsaw* v. *Dunlap*, 112 Ind. 576; *Cincinnati, etc., R. W. Co.* v. *Long*, 112 Ind. 166; *Riley* v. *Boyer*, 76 Ind. 152; *Pittsburgh, etc., R. W. Co.* v. *Morton*, 61 Ind. 539; *Roe* v. *Cronkhite*, 55 Ind. 183; *Ray* v. *Dunn*, 38 Ind. 230; *Crossley* v. *O'Brien*, 24 Ind. 325 (87 Am. Dec. 329).

Where, as here, there is only one witness upon a pivotal point, it is our duty to apply the law to his testimony, and if, under the law, the testimony is not sufficient to sustain a recovery, so adjudge. Where there is no conflict of testimony the court must necessarily decide the legal effect of the testimony in the record. In doing this there is no departure from the long settled rule to which counsel refer.

The question of negligence is never one exclusively of fact. The jury find the facts, but if from the facts one inference only can be drawn, and that is that there was negligence, it must be so adjudged as matter of law; or, conversely, if it can be clearly affirmed as matter of law that there was no negligence, the court must so declare. In no case where

negligence is the issue does the court entirely abdicate its power, for as to the law it must always rule, although, in some instances, the jury ultimately decide whether there is, or is not, negligence; but in every case the court must declare the law.

In ruling that there is no negligence the court does not rule upon a question of fact. Judge Holmes says: "Where a judge rules that there is no evidence of negligence, he does something more than is embraced in an ordinary ruling that there is no evidence of a fact. He rules that the acts or omissions proved or in question do not constitute a ground of legal liability, and in this way the law is gradually enriching itself from daily life, as it should." Holmes Common Law, 120.

This principle applies here, for we rule, not that there is no evidence of a fact, but that the facts proved do not create a legal liability. It has been very often decided by our own and by other courts that, where the facts are undisputed and unequivocal, the court must apply the law to them. *Wabash, etc., R. W. Co.* v. *Locke,* 112 Ind. 404, and cases cited; *Pittsburgh, etc., R. R. Co.* v. *Spencer,* 98 Ind. 186, and cases cited; *Counsell* v. *Hall,* 5 New Eng. Rep. 462, n.

The doctrine that the welfare of society forbids a man from thrusting himself into immediate and certain danger without pressing necessity, remounts to the case of *Hales* v. *Petit,* 1 Plowden, 253, a case made famous because of its having suggested, as many suppose, to Shakespeare, the grave-digger's scene in Hamlet. Although the reasoning of that case is quaint and fanciful, still the principle asserted is a wise one, and has long formed part of our jurisprudence.

We did not assert in our former opinion that an employee, who takes a risk that imperils his safety, can not maintain an action; but we did decide that if he, knowingly and deliberately, assumes a risk that will lead him into immediate and certain danger, he can not recover, although his employer had promised to remedy the defect. The authorities we cited sus-

tain this principle, and we applied it to the uncontradicted evidence. Where, as here, there is only one witness to a material fact, we must act upon his testimony, and in applying a principle to it we do not weigh evidence. *Cincinnati, etc., R. R. Co.* v. *Long,* 112 Ind. 166; *Palmer* v. *Chicago, etc., R. R. Co.,* 112 Ind. 250.

It may be that on another trial the evidence may be such as to take the case out of both the rules here stated, for it may well be that additional evidence will explain the testimony given by Mr. Watson, or prove circumstances giving it a different meaning and effect; but as the record presents the case to us, we find by applying the law to the evidence that the verdict is not supported.

Petition overruled.

Filed March 7, 1888.