## McANDREWS, RESPONDENT, v. MONTANA UNION RAILWAY COMPANY, APPELLANT.

[Submitted January 28, 1895. Decided February 11, 1895.]

MASTER AND SERVANT—*Assumption of risk in the use of dangerous machinery.*—If machinery is not only defective, but is so obviously dangerous that no ordinarily prudent person would assume the risk of using it, and the employee does use it, knowing its absolutely and obviously dangerous condition, the master is not liable, notwithstanding the promise to remedy the defects which produced the injury.

SAME—*Use by employee of defective handcar—Contributory negligence.*—In an action by an employee of a railway company for personal injuries sustained by reason of defects in a handcar on which he was riding, causing it to leave the tracks while crossing a bridge, it was shown that the plaintiff knew perfectly the defective condition of the car, that he remained in the defendant's service long after being informed by his superiors that a request merely had been made for a new car; that the defendant's foreman told him to use the car with great care, and do the best he could until he could get a new one; that he never refused to use the car, and was never threatened to be discharged if he did not use it, and that he had full knowledge of the fact that the car had jumped the tracks going at a rate of speed much less than that acquired at the time of the accident. *Held*, that in view of this evidence, the plaintiff was not entitled to recover.

*Appeal from Second Judicial District, Silver Bow County.*

ACTION for damages for personal injuries. Judgment was rendered by McHATTON, J., for the plaintiff below. Reversed.

Statement of the case prepared by the justice delivering the opinion:

This is an action for damages for personal injuries. The plaintiff states in his complaint that on the twenty-ninth day of August, 1889, and prior thereto, he was employed by, and was in the service of, the defendant as a section-hand; that on that day he was employed, with others, in repairing the road-bed of the defendant; that the headquarters of the section on which he was working were at Garrison; that the section he

was working on was south from that point about five miles; that he, with his co-employes, had to travel over their section to and from their work on a handcar furnished for that purpose by the defendant; that it was the duty of the defendant to furnish for said purpose a good, safe, and secure handcar; that the defendant failed in the discharge of its duty in this respect, and, instead, furnished knowingly an unsafe, defective, insufficient, and dangerous handcar; that said handcar had been so unsafe for some time; that about fifteen days prior to said twenty-ninth day of August, 1889, plaintiff informed defendant and the foreman of the section of the defective and dangerous condition of said handcar; that he requested that said handcar be repaired or a safe one furnished; that defendant promised to comply with said request, and ordered plaintiff to go on and use said car in the mean time; that, believing said promise would be speedily fulfilled by defendant, plaintiff continued in said employment and use of said handcar with great and extraordinary care; that by the exercise of such care he and his co-employes were enabled to use said car until the twenty-ninth day of August, 1889, without accident or injury; that on said day, when he was ordered by said foreman to use said handcar in his employment, plaintiff again objected, on account of the dangerous condition thereof, to doing so, but was again assured by said foreman that a good car would soon be furnished, and, relying on said promise, he did use the same; that on said day, while returning from his work on said handcar, and while exercising great care in the use thereof, in crossing a bridge, said car left the track, without any fault of plaintiff, on account of its defective and dangerous condition; that plaintiff was then and there thrown from said car, and off the said bridge, a distance of about forty feet, and greatly injured thereby. The complaint also contains allegations as to the nature and extent of the injuries sustained by plaintiff.

The answer of defendant denies the allegations of the complaint, except as to plaintiff's employment by defendant. The defendant alleges that plaintiff had been using the handcar in question for a long time prior to the day on which he was injured; that he was perfectly familiar with its condition, and that, with a full knowledge of its dangerous condition, he

voluntarily used the same, and was not induced to use it on account of any promise by defendant or the foreman to repair said handcar or procure a safe one.

On the trial the plaintiff obtained a verdict for five thousand dollars, for which sum judgment was rendered. From this judgment and an order denying a motion for a new trial this appeal is prosecuted.

   *J. S. Shropshire*, and *Geo. Haldorn*, for Appellant.

   To hold the defendant liable for the negligence of incompetent servants, that issue must be made by the pleadings and proofs, otherwise the instruction complained of is erroneous. (*Lawler* v. *Railroad Co.*, 62 Mo. 463; 16 Am. Rep. 492; *Columbus etc. R. R. Co.* v. *Troesch*, 68 Ill. 545; 18 Am. Rep. 578; *Dunmead* v. *Smelting Co.*, 12 Fed. Rep. 847.) This not being a case where the plaintiff was inexperienced and was ordered to do a dangerous thing, of the danger of which he was ignorant and of which he was not informed, is thus distinguished from *Kelly* v. *Cable Co.*, 7 Mont. 70. What the plaintiff was doing at the time of the accident was in the line of his employment, the nature of which required him to operate this handcar. (*Guthrie* v. *Railroad Co.*, 11 Lea, 372; 47 Am. Rep. 286; *Frost* v. *Railway Co.*, 17 Wall. 553; 16 Am. Rep. 498, note; *Parkhurst* v. *Johnson*, 15 Mich. 70; 45 Am. Rep. 28; *Sweeney* v. *Berlin etc. Co.*, 101 N. Y. 520; 54 Am. Rep. 726, and note 727.) As a general rule the master is bound to furnish reasonably safe machinery for the use of his servants. But knowledge of the unfitness of the machinery on the part of the master and ignorance on the part of an injured servant is the essence of the action for the injury. (Beach on Contributory Negligence, 350; 2 Thompson on Negligence, 972, note.) The plaintiff's knowledge of the condition of the car was a bar to his action. (Beach on Contributory Negligence, § 140.) He assumed the risk of injury by remaining after knowledge of the defect, etc. (*Buzzell* v. *Laconia Mfg. Co.*, 48 Me. 113; 77 Am. Dec. 217, note 222; *Chicago etc. R. R. Co.* v. *Swett*, 45 Ill. 197; 92 Am. Dec. 210, note 215; *Gibson* v. *Erie Ry. Co.*, 63 N. Y. 449; 20 Am. Rep. 552; *Eureka Co.* v. *Bass*, 81 Ala. 200; 2 Thompson on Negligence, 1009;

*Railroad Co.* v. *Duffield*, 12 Lea, 63; 47 Am. Rep. 319; *Parody* v. *Railroad Co.*, 15 Fed. Rep. 205.)   Mere complaint about the defective condition of the car would not justify the plaintiff in continuing to use it, unless there was a promise, expressly or impliedly given, to repair or replace it within a reasonable time. (*Railway Co.* v. *Drew*, 59 Tex. 10; 46 Am. Rep. 261.)   The plaintiff in fact never objected to using the car, but simply called the attention of the foreman to it. (*Greenleaf* v. *Railroad Co.*, 33 Iowa. 52; *Kroy* v. *Railroad Co.*, 32 Iowa, 357.)   The foregoing principles are based upon the theory that the master is not bound to take more care of the servant than the latter is of himself. (*Buzzell* v. *Laconia Mfg. Co.*, 48 Me. 113; 92 Am. Dec. 122, note; *Malone* v. *Hawley*, 46 Cal. 409; *Malone* v. *Hathaway*, 64 N. Y. 5; *McGlynn* v. *Brodie*, 31 Cal. 376.)   In the case at bar there was no emergency, and no threat of any kind or inducement, except perhaps a waiting dinner, and to get upon the handcar and go to dinner was in the direct line of the plaintiff's employment. (*Railroad Co.* v. *Duffield, supra; Sweeney* v. *Berlin etc. Co., supra*.)   There was no latent defect in this car, as to the nature of which the plaintiff was not informed. (*Forrest* v. *Jewett*, 88 N. Y. 264; *Gibson* v. *Erie Ry. Co., supra; Chicago etc. R. R. Co.* v. *Swett, supra; McGlynn* v. *Brodie, supra; Kelly* v. *Silver Spring Co.*, 12 R. I. 112; 34 Am. Rep. 617, note 621.)   The defect was so obvious that it was the duty of the plaintiff to refuse to use the car. (*Patterson* v. *Railroad Co.*, 76 Pa. St. 389; 18 Am. Rep. 415); and it must be presumed that he was familiar with its construction and use, and the danger of running it at a high rate of speed. (*Sweeney* v. *Berlin etc. Co., supra*.)   Where the employee goes to work with a defective machine, knowing it, and continues to work with it, the obligation of the master to put or keep the particular machine in repair is more than counterbalanced by the rule that the servant assumes the risk of known danger or defects. (*Railroad Co.* v. *Herbert*, 116 U. S. 641.)

*John W. Cotter*, for Respondent.

It was for the jury to say whether the plaintiff was in the exercise of due care in relying upon the promise of his superior

officer that the defect would be remedied, and in using the handcar after knowledge of its defective or insufficient condition. The burden of proof in such case is upon the employer to show contributory negligence. (1 Shearman & Redfield on Negligence, §§ 91, 185, 186, 211–15; *Hough* v. *Texas etc. Ry. Co.*, 100 U. S. 217; *McMahon* v. *Port Henry Iron Co.*, 24 Hun, 48; *Washington etc. R. R. Co.* v. *McDade*, 135 U. S. 569; *Indiana etc. Co.* v. *Folson*, 139 U. S. 55; *Gulf etc. Ry. Co.* v. *Brentford*, 79 Tex. 619; 23 Am. St. Rep. 377, note 386; *Roux* v. *Lumber Co.*, 85 Mich. 519; 24 Am. St. Rep. 102; *Green* v. *Railroad Co.*, 31 Minn. 248; 47 Am. Rep. 785; *Anderson* v. *Lumber Co.*, 28 Pac. Rep. 7; *Thorpe* v. *Railway Co.*, 89 Mo. 650; 58 Am. Rep. 120, note 125.) The party injured is presumed to have been duly careful until the contrary is proved· (*Little Rock etc. R. R. Co.* v. *Eubanks*, 48 Ark. 460; 1 Shearman & Redfield on Negligence, §§ 106–10; *McDougall* v. *Railroad Co.*, 63 Cal. 431; *Higley* v. *Gilmer*, 3 Mont. 90; *Gulf etc. Ry. Co.* v. *Brentford, supra.*) It is the duty of the employer to maintain in his employment competent persons to manage and conduct his business and inspect machinery and apparatus, and the person performing this duty is not a fellow-servant. (7 Am. & Eng. Ency of Law, 830, note 1, 834, note 1.) In cases of this character, the real question to be determined is whether, under all the circumstances, the master had a right to believe, and did believe, that the servant intended to waive his objections to the defect in the machinery provided for his use, and accept an implied contract exempting the master from liabilities. (1 Shearman and Redfield on Negligence, § 2157; *McMahon* v. *Port Henry Iron Co., supra; Booth* v. *Boston etc. R. R. Co.*, 73 N. Y. 38; 29 Am. Rep. 97, note 102; *Cone* v. *Delaware etc. R. R. Co.*, 81 N. Y. 206; 37 Am. Rep. 491; *Cayzer* v. *Taylor*, 10 Gray, 274; 69 Am. Dec. 317.) The master cannot avail himself of the negligence of third persons as a defense to his own negligence. The fact that the injury was caused by the joint negligence of the defendant and a third party is no defense. (1 Shearman and Redfield on Negligence, § 66; Cooley on Torts, 132; *Lane* v. *Atlantic Works*, 107 Mass. 104; 7 Am. & Eng. Ency. of Law, 825, 828.) The negligence of the foreman in furnish-

ing and allowing a confessedly defective and dangerous hand-car to be used was the negligence of the defendant. (1 Shearman and Redfield on Negligence, §§ 204–206; *Kelly* v. *Cable Co., supra.*) If the defendant, or its foreman, knew, or by the use of reasonable diligence might have known, of the existence of danger from the use of the handcar in question, it was a bounden duty on their part and on the part of its foreman to have informed the plaintiff of the same instead of encouraging him to use it, as the record shows the foreman did. (Comp. Stats., div. 5, § 697; *Kelly* v. *Cable Co., supra.*) The instructions given by the court must be taken and considered together, and if, on the whole, the law applicable to the case has been correctly stated, there is no error. (*Renshaw* v. *Switzer*, 6 Mont. 464; Elliott's Appellate Procedure, § 648, note 2; Hayne's New Trial and Appeal, § 131.) The giving of an abstract instruction that is not misleading is not ground for reversal. (Hayne's New Trial and Appeal, § 122; *Satterlee* v. *Bliss*, 36 Cal. 519; Elliott's Appellate Procedure, § 642; *Sawyer* v. *Chicago etc. R. R. Co.*, 22 Wis. 402; 99 Am. Dec. 49.) It is the duty of the master to inspect machinery from time to time. (1 Shearman and Redfield on Negligence, § 194, note 5); and the plaintiff's knowledge of the condition of the car is not a bar to his action in this case, owing to the fact that the defendant led him to believe that the same would be replaced. (1 Shearman and Redfield on Negligence, § 220.)

Pemberton, C. J.—The appellant contends that the verdict is not supported by the evidence, in that it appears from the evidence of the plaintiff, clearly, that, if the handcar was defective and dangerous, the plaintiff had full knowledge thereof; that he used it voluntarily; that he did not use it with proper care; that he never refused to use the car, and that no threats or inducements were used by the defendant or the foreman to induce him to use it. This contention requires an examination of the testimony offered by the plaintiff.

It appears from the plaintiff's own testimony that he was a man of considerable experience in the kind of work he was employed in doing at the time he was injured, he having been engaged in this character of work for about three years before

this.   He states in his complaint that the car was defective and dangerous, and that, about fifteen days before the accident, he so informed the foreman.   He swears that on the day of the accident, and just before it occurred, he told the foreman "that the car was unsafe, and that he was afraid it would kill somebody," and that the foreman replied: "Get on that car. It is all right.   We will soon get a new one."   In another place he says: "The foreman said he was going to get a new car in a few days.   He told me to get on the car and use it as carefully as we could, and get along the best we could."   In describing the condition of the car at the time he was using it the plaintiff says: "As to what was the trouble with the car, as near as I can judge, she used to wabble.   Her boxes were too loose, and she would wabble from one side to the other, and she was too loose, and out of running order.   Furthermore, there was no brake on the car—that is, that could be used.   It was an old car, and, in fact, I could n't even find the date on it, or the number of it.   It was an old car, being, I guess, used for many years.   I could n't say how many.   Her wheels were what I would call 'wood and iron,' and here, where the iron runs out from where it is on the axle, the wood was loose; the wheels were wood, along with the iron inside the iron, and where the wood fastened into the boxing around the axle some of the wood was loose, and would work in and out.   That was the car that I was on the morning that I was injured."   The plaintiff also swears that he had heard of this car jumping the track before this, and on one occasion it jumped the track when he was present, when the evidence shows it was being run at about four miles an hour.   At the time of the accident plaintiff says they were not going any "faster than between five and seven miles an hour, as near as he could judge."   The plaintiff says that when he was told to get on the car by the foreman he could not say whether the car was all right or not, but supposed the foreman knew more about it than he himself did, because he was the foreman, and was supposed to know more about it than he did.   This is substantially all that plaintiff's testimony shows that the foreman did or said to induce him to use the car.

Martin McManimee, the section foreman, was introduced as

a witness on the part of the plaintiff. He and plaintiff are cousins. His testimony corroborates that of plaintiff in the main, as to the condition of the car. He says plaintiff, just before the accident, spoke to him about the car, saying it was not safe. He says: "I told him we had to do the best we could. I told him to get on the car, and go to Garrison. I expected that any time." In another place he says: "The condition of the car on which McAndrews was riding that morning was that for months before it was not fit for any white man to put it on a track." In another place this witness says: "McAndrews had complained about this car, and all the men on that section had made the same complaint. It had frequently left the track with me before this accident. It is easy for any man to know how she would leave the track." He says the axle was bent. He says, at the time of the accident, "she was running, perhaps, between six and seven and eight miles an hour; not faster." It appears that there were two cars on the track going to Garrison at the time of the accident; that plaintiff was on and in charge of the front car, and the foreman in charge of the other; that the cars were running very closely together—so closely that they frequently struck each other—before the accident. He says that this car left the track with him once, about two weeks before the accident, going at the rate of not more than four miles an hour, and that plaintiff was present. He says the car had a "bent axle," and "was out of repair in every shape from the first day she came to Garrison." McManimee further testifies: "When McAndrews complained, I told him that Sawyer always told me that he would send a new car as soon as he could get one, and to get along the best way he could until such time. Sawyer told me he would send a new car as soon as he could. I did not know when he would send it. I ordered McAndrews to go ahead anyhow, and use the car. I did not threaten to discharge him if he did not use the car." He further swears that he never in his life "told a man that he would have to take his time if he did not use a car." Again, this witness says: "Several times before this, McAndrews had said that the car was unsafe, which I knew, but he never refused to use it—that is, straight out refused; he always grumbled a little." In answer

to a question, the witness says he did not order plaintiff to take this car against his will, for he says: " I could n't order any man against his will."

From the foregoing statement of the evidence offered by the plaintiff it is evident that he had full knowledge of the condition of the car at the time of, and for a long time prior to, the accident, and that he continued to use it, knowing that it was dangerous to do so. This would certainly be a bar to his right of recovery, unless he has shown that the defendant promised to get a new car, and held out to him some sufficient inducement or assurance to continue to use the car in its defective condition, and that he did continue to use it on account of such inducement or assurance. It is claimed by plaintiff that the foreman, having promised to secure a new car in place of the defective one, and having told him to go ahead and use the old one and do the best he could, exercising proper care in the use thereof, constitutes such promise to get a new car, and such an inducement, as justified him in continuing to use the dangerous one.

The law governing this contention is thus stated by Mr. Justice Harlan in *Hough* v. *Texas etc. Ry. Co.*, 100 U. S. 213: "There can be no doubt that, where a master has expressly promised to repair a defect, the servant can recover for an injury caused thereby within such a period of time after the promise as it would be reasonable to allow for its performance, and, as we think, for an injury suffered within any period which would not preclude all reasonable expectation that the promise might be kept." But this rule is a qualified one. If the machinery is not only defective, but so obviously dangerous that no ordinarily prudent man would assume the risk of using it, and the employee does use it, knowing its absolutely and obviously dangerous condition, and the dangers of using it, the master is not liable, notwithstanding the promise to remedy the defect. This qualification to the rule is well stated in *Railway Co.* v. *Watson*, 114 Ind. 20, in the following language: " Where an employee knows that the danger is great and immediate, such as a reasonably prudent man would not assume, he cannot recover for an injury, even though he remained in the employer's service in reliance upon the latter's promise to remedy the defects

which produced the danger." (2 Thompson on Negligence, 1011; *Patterson* v. *Railroad Co.*, 76 Pa. St. 389; *Kane* v. *Railroad Co.*, 128 U. S. 91; 9 Sup. Ct. 16; *Furnace Co.* v. *Abend*, 107 Ill. 45.)

The plaintiff in this case testifies that he knew the condition of the car; said somebody would get killed using it; he had known its condition for a long time; remained in the defendant's service long after the alleged promise to get a new car; had seen the car jump the track going at a rate not faster than four miles an hour; says the foreman told him to use the car with great care, and do the best he could until he could get a new one; he never refused to use the car; he was never threatened to be discharged if he did not use it. McManimee, plaintiff's cousin, says the car was so defective that anybody could see it; "that no white man would put it on a track"; that he told plaintiff to use it and to do the best he could, using great care, until he could get a new one. Notwithstanding plaintiff's familiarity with the condition of the car, his knowledge of the fact that it had jumped the track going at a rate not to exceed four miles an hour, on the morning of the accident, immediately after saying that the car was so dangerous that it would kill somebody, he got on the car, in charge thereof, and propelled it at a rate of speed somewhere between five and eight miles an hour, over the bridge where the car left the track, and he incurred his injuries. From this view we fail to see, and are unable to find from the evidence, any support for the contention that he was induced to remain in the service of defendant and use the dangerous car, by the promise or assurance of the foreman to furnish a new one as soon as he could get it. And, further, it appears, if he did so, that he disregarded the admonition of the foreman to exercise extraordinary care in the use of the car, and that he was guilty of contributory negligence in propelling this dangerous car at such a rate of speed in going over a bridge forty feet high, where the accident occurred.

There are many authorities that hold that where an employee, having knowledge of the defective condition of machinery with which he is required to work, gives notice of such

defective condition to the employer, and is induced to remain by the promise of the employer to repair the same, he may recover for injuries sustained, notwithstanding his knowledge of the condition of such machinery, especially where the danger is not absolute and immediate. But in many of such cases the right to recover is based upon the express promise to repair. But we think the evidence in the case at bar does not bring it within this rule. In the case at bar there was no express promise to repair, or get a new car, and no such assurance or promise to do so was relied upon by plaintiff. The most that can be said is that the foreman informed plaintiff that he had asked for a new car, that he expected it at any time, and directed the plaintiff to use the car in question with great care, until he could get a new one. Besides, we think the evidence very clearly shows that plaintiff was guilty of such recklessness in the use of the car, especially in the manner in which he was using it at the time of the accident, as no reasonably prudent man would be guilty of, knowing, as he did, its dangerous condition; and that, by such action, he so far contributed to his own injury as to defeat his right of recovery in this case. The plaintiff knew perfectly the defective and dangerous condition of the car, and the risk he assumed in using it. He could not shut his eyes to these well-known things, and recover for injuries sustained by reason of his want of ordinary prudence. Knowing the condition of the car, as plaintiff did, no reasonably prudent person would have assumed the risk of using the same in the manner plaintiff did, even upon any promise made to furnish a new car by the foreman. The plaintiff cannot recklessly use dangerous machinery, and assume recklessly the risk of so doing, and then recover on the promise of defendant to repair or furnish new machinery, if such promise had been made.

It is unnecessary to consider other assignments of error in this case, especially those as to the instructions. As the instructions for the plaintiff were given upon the theory that the evidence was sufficient to authorize a recovery, they were erroneous.

We think the court erred in overruling a motion for a new trial.

The judgment is reversed and cause remanded for new trial.

*Reversed.*

Hunt, J., concurs.

De Witt, J., having been of counsel, did not sit in the case.