# CRUM v. NORTH VERNON PUMP & LUMBER COMPANY ET AL.

[No. 4,955. Filed November 1, 1904. Appeal to Supreme Court dismissed December 8, 1904.]

1. MASTER AND SERVANT.—*Dangerous Works and Ways.*—*Promise to Repair.*—*Assumed Risk.*—Where a servant enters upon an employment the dangers of which are known to him, he must be held to assume such risks unless the master expressly promises to remedy such defects, and the promise is the basis of the exception. p. 256.

2. SAME.—*Promise to Repair Defect.*—*Lessening Danger.*—*What Risk Assumed by Servant After Promise to Repair.*—Where the servant objects to working in a place because of dangers, and the master promises to repair, such servant must show that such repairs would avoid the dangers, and if the servant continue, he is not relieved from all risk, but must not expose himself to known dangers, although there be such promise to repair. p. 256.

3. PLEADING.—*Complaint.*—*Master and Servant.*—*Dangerous Works and Ways.*—*Promise to Repair.*—Where a complaint by a servant against his master for damages for personal injuries shows, that such servant was employed as fireman; that in firing he used slabs; that the cut-off saw from which such slabs were received was in the second story and that the operator pitched the slabs from such story so as to fall in front of the furnace on the first floor; that plaintiff could not see such operator, nor could the operator see plaintiff; that defendant promised to repair by putting in a chute; that by reason of such promise plaintiff remained and was injured, and there was no allegation showing that such chute would have avoided or lessened the dangers, such complaint is bad. p. 257.

4. MASTER AND SERVANT.—*Dangerous Machinery.*—*Factory Act.*—*Chute.*—Where a sawmill consists of a two-story building and a cut-off saw is operated in the second story, and the slabs from such saw are pitched so as to fall in front of the furnace on the first floor, the failure to provide a chute in which such slabs may be carried does not constitute negligence under section nine of the factory act (Acts 1899, p. 231). p. 258.

From Jackson Circuit Court; *Joseph H. Shea,* Special Judge.

Action by Oliver D. Crum against the North Vernon Pump & Lumber Company and others. From a judgment

for defendants, plaintiff appeals.    (On appeal to Supreme Court, dismissed, 163 Ind. 596.)    *Affirmed.*

*McHenry Owen,* for appellant.
*Lincoln Dixon* and *H. C. Meloy,* for appellees.

Comstock, J.—Appellant brought this action in the Lawrence Circuit Court against appellees to recover for personal injuries alleged to have been received while working as their employe in a sawmill in Lawrence county.   A change of venue was taken to the Jackson Circuit Court. A change of judge was granted in the Jackson Circuit Court.   The amended complaint consisted of two paragraphs.   A demurrer was sustained to each for want of sufficient facts.   Appellant declining to plead further, judgment was rendered against him for costs.   A reversal is asked upon the rulings on said demurrers.

Omitting the formal parts and conclusions of fact, the complaint may be fairly summarized as follows:   At the time plaintiff received his injury, defendants owned and were operating a sawmill known as a "band mill," and employed therein a number of servants, of whom plaintiff was one; that the building in which were located the saws and other machinery of said mill was composed of two stories, the second of which was supplied with a floor which was five and one-half feet above the sills of the lower story; that on said second story, and ten feet west of the east end of said second floor, was a saw known as a "cut-off saw," fastened to a table which was two and one-half feet in height, and the operator thereof worked on the west side of same; that the boiler and engine-room was immediately east of said sawmill building, was but one story high, and lacked about thirty-five feet of projecting northward to the northeast corner of the said sawmill building, so that when wood and slabs were pitched and thrown out eastward from the second floor, and from the cut-off saw, the same would fall north of where the said wood and slabs were used, and

near the fire doors of the furnace by which the boiler was heated; that when the said place where said wood and slabs would fall, when so pitched and thrown from the second floor, and from the cut-off saw, was allowed to fill up so that said wood and slabs struck the top of the wood and slab pile, the place of the work of plaintiff, which was at and near said boiler and engine-room and building in which the same were placed and operated, was not particularly dangerous, but when said place became empty, so that the wood and slabs, when so pitched and thrown, fell on the ground, the place of the work of plaintiff was thereby made dangerous and unsafe, in this: that he was in danger of being struck and injured by said wood and slabs when attempting to pick up the same; that the plaintiff, at the time of his injury, when at the place of his work, could not see the workman who operated the cut-off saw, and could not know when a slab or stick might be thrown from the place of said saw out at the east end of said second story to his place of work, nor could the workman who operated the said cut-off saw, from his place of work, see the plaintiff at his work, thus making the place of the work of the plaintiff dangerous and unsafe when the slab pile had become wholly, or almost wholly, removed; that about one week immediately preceding the injury of the plaintiff the said slab bin, by the order of the defendants, had been made empty, and caused to remain empty, so that, when the slabs were pitched from the said saw down toward the said boiler-room, they would go to the bottom of the bin, which was the ground, thus making the place of the work of the plaintiff dangerous and unsafe, which fact was by plaintiff communicated to defendant, and to defendant's vice-principal William Hess, upon which the defendant, through its vice-principal William Hess, "then and there promised the plaintiff that the said defective and insufficient machinery and appliances would be forthwith supplied," and the said danger and unsafety to plaintiff removed and obviated, by con-

structing and placing a chute of sufficient size from the cut-off saw downward to the bin room, to convey the said wood and slabs to their place of use; that, pursuant to said promise so made by defendant to plaintiff, defendant then and there, through its vice-principal William Hess, ordered, with the knowledge of the plaintiff, that measurements be made and plans and designs formed and arranged for the immediate construction of the said chute, and that the said chute be constructed and placed in the said mill immediately, and plaintiff, relying upon the promise of defendant so made, continued in appellee's service for three days immediately thereafter, but the chute or conveyor was not constructed, when, by reason of the slabs thrown down from said floor of the mill into the bin or receptacle for the same, where plaintiff had to come for them, he was struck by a heavy slab of wood, and received the injury of which he complains, and on account of which he sues; that he was injured without any fault upon his part, and by reason of the negligence of the defendant in failing to supply the chute, in accordance with the promise set out.

1.   A servant voluntarily entering upon an employment, the dangers of which are known to him, must be held to have assumed the consequences of such risk. "The employe who continues in the service of his employer after notice of a defect augmenting the danger of the service, assumes the risk as increased by the defect, unless the master expressly or impliedly promises to remedy the defect. The promise of the master is the basis of the exception." *Indianapolis, etc., R. Co.* v. *Watson* (1887), 114 Ind. 20, 27, 5 Am. St. 578; 2 Bailey, Per. Inj., §3079.

2.   Appellant's knowledge of the danger of his employment, and his continuance in appellee's service after such knowledge, clearly appear. His right of action, then, if it exists at all, must be based upon appellee's promise to construct the chute. In addition, it should appear that the building of the chute would have lessened the danger to ap-

pellant, and that he believed it would do so. It does appear that the vice-principal of appellee promised to have the chute constructed, but it only appears that said vice-principal assured appellant that said chute would remove the danger; but no fact is alleged showing that the danger would have been lessened, nor is it alleged that appellant believed that such result would follow the construction of said chute. The exception which has been stated does not relieve the servant from all risk. If the danger is known and imminent, he must not expose himself to it, even if a promise has been made to remove it. *Indianapolis, etc., R. Co.* v. *Watson, supra; McAndrews* v. *Montana Union R. Co.* (1895), 15 Mont. 290, 39 Pac. 85; *Erdman* v. *Illinois Steel Co.* (1897), 95 Wis. 6, 69 N. W. 993, 60 Am. St. 66.

3. The allegations of the paragraph under consideration show that the danger was known, was imminent, and great. It was a constant menace to appellant's safety. He knew that he was liable to be struck by a falling slab of wood any time that he attempted to "pick up any part or parcel of the same for the purpose of making a fire in the said furnace." "When the line of danger, direct and certain, is reached, there the citizen must stop, and he can not pass it, even upon the faith of another's promise, if to pass it requires a hazard that no prudent man would incur." *Indianapolis, etc., R. Co.* v. *Watson, supra.* The facts alleged do not present a claim based upon the use of defective machinery after a promise has been made to repair it. A defective machine may be, and often is, operated, by the use of care, without injury to the employe. The situation in which the facts place the appellant shows that care was unavailing for the reason that he could have no knowledge when the slabs would be thrown, nor could the man at the cut-off saw know when appellant was in a place of danger. It has been held that the rule which appellant invokes—that a servant may rely on the master's promise

to repair—does not apply when the servant is performing ordinary labor, not requiring intricate machinery or appliances, and has an equal knowledge with the master of existing defects or dangers. *Marsh* v. *Chickering* (1886), 101 N. Y. 396, 5 N. E. 56; *Meador* v. *Lake Shore, etc., R. Co.* (1894), 138 Ind. 290, 46 Am. St. 384.

4. The second paragraph describes the mill and conditions as set out in the first, and charges that the failure to furnish a chute or conveyor for the slabs constituted negligence, under section nine of the factory act, approved March 2, 1899 (Acts 1899, p. 231, §7087i Burns 1901). Its sufficiency must be determined upon the theory upon which it is framed. Said section makes it the duty of any person in charge of an establishment of the kind operated by appellees to furnish "belt shifters or other safe mechanical contrivances for the purpose of throwing on or off belts or pulleys; and, whenever possible, machinery therein shall be provided with loose pulleys; all vats, pans, saws, planers, cogs, gearing, belting, shafting, set-screws and machinery of every description therein shall be properly guarded, and no person shall remove or make ineffective any safeguard around or attached to any planer, saw, belting, shafting or other machinery, or around any vat or pan, while the same is in use, unless for the purpose of immediately making repairs thereto, and all such safeguards shall be promptly replaced." The failure to provide the chute or conveyor does not constitute a violation of a statutory duty.

The court did not err in sustaining the demurrer to each paragraph. Judgment affirmed.